220 So.2d 882

**Bobby Sherman SEGERS, Jr.**

v.

**STATE of Alabama.**

**6 Div. 563.**

Supreme Court of Alabama.

March 13, 1969.

Jerry B. Oglesby, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant was convicted of robbery and was sentenced to thirty years in the State penitentiary. He took an appeal and we remanded the cause because the record contained no transcript of the evidence, Segers v. State, 283 Ala. 42, 214 So.2d 318.

Appellant was represented by court-appointed counsel in the circuit court and by a different court-appointed counsel on this appeal.

Appellant was charged with robbing A. J. Tortorici of two hundred dollars. Tortorici was operating a small store at Docena, known as the Lucky Shopping Center, on August 4, 1966. Part of the store was enclosed by partitions about seven feet high, but which did not reach the ceiling, and the enclosed space was used as a post office. That afternoon around five o'clock, four black males came into the store, three armed with sawed-off shotguns and one with a pistol. In addition to Tortorici, an eighteen-year-old employee, Walter Simmons, the clerk in the post office, Mrs. Mildred Boger, and a two-year-old child who lived across the street were in the store. One of the robbers, with his gun pointed at Tortorici, took "around two hundred dollars" from the cash register and ten dollars from his wallet, and lined Tortorici and Simmons up in front of a display case. Another robber went to the post office window and pointed a gun at Mrs. Boger, while the appellant climbed over the partition of the post office and with a pistol held on Mrs. Boger, took $17.40 and 877 money order blanks from the post office, and $27.00 from her billfold. They made her line up beside Tortorici and Simmons. One of the robbers picked up the little girl who was screaming and Mrs. Boger was ordered to calm the child. Tortorici testified that one of the men, not appellant, "threatened to take the child with them if we didn't tell them where the rest of the money was." About that time, C. E. Crane came to service the store refrigerator and he was covered with a gun, ordered to drop his tools and line up with the others, and then appellant told one of the others to "get a wallet" and they took $40.00 from Crane's wallet. They left the premises in a pink and white 1955 model Buick. Tortorici reported the robbery to the sheriff's office, giving a description of the four men, their automobile, what they took and that they were armed.

Later that night, police officers Paul Price and Bill Stephens, who worked the shift from 11.00 P.M. to 7:00 A.M., were notified of the robbery and were given descriptions of the automobile and the occupants. About 11:15, they saw a pink and white 1955 model Buick at a filling station in Birmingham and the defendant and two other men standing near the car. Officer Stephens approached and spoke to the men and officer Price walked by the car, glanced inside it and saw approximately 200 postal money order blanks on the front seat. They were not covered and were exposed. They informed the three that

they were under arrest and officer Stephens started to search Flowers, one of the three. Appellant "reached and grabbed" Stephens' pistol, breaking the strap across the hammer and pulled it partially from the holster. Stephens shoved appellant and the pistol dropped to the concrete. Flowers ran off and appellant ran by the side of the car. As he reached the front, officer Price knocked him down, handcuffed him and then called a detective. The third man, Wilkins, had started to run but he, too, was apprehended. The officers saw a sack on the front seat, lifted it out, and found it contained sandwiches. This sack was on top of a bundle partially wrapped in brown paper, but the edges of the contents were visible and they could tell that they were more money order blanks. They put the bundle, the loose blanks, the sandwiches and the contents of the pockets of appellant and Wilkins on the hood of the car. Shortly thereafter, detective Ellard arrived and the evidence and the defendants were turned over to him. Ellard counted 867 money order blanks.

At trial, appellant was identified as being one of the participants in the robbery by Tortorici, Simmons, Mrs. Boger and Crane. Appellant did not take the stand but called David Wilkins and John David Fairley as witnesses. Both Wilkins and Fairley testified that they participated in the robbery but appellant was not there. Each agreed that appellant was in the car shortly before the robbery and that they picked him up again after they had left the store. Both named Wilkins as being present and participating and Fairley said that there was another man with them but he did not know his name.

Appellant's counsel on appeal states in brief:

"Although no specific error is cited in this brief, it is the Appellant's contention that it is incumbent upon this Honorable Court to review the transcript of this case which was tried in the Circuit Court of the Tenth Judicial Circuit of the State of Alabama."

Only two points require discussion. The first is the question of the refusal to grant a continuance on the ground that one of the admitted participants, Flowers, was not present, and the reason was that he was in the federal penitentiary. It was shown that appellant expected Flowers, Wilkins and Fairley to testify that appellant was not present and did not participate in the robbery. The State agreed to stipulate that Flowers would testify the same thing that Wilkins and Fairley testified and the trial court overruled the motion for a continuance on the ground that Flowers' testimony would only be cumulative.

The matter of continuance in a criminal case is addressed to the trial court's sound discretion, the exercise of which will not be disturbed unless clearly abused. Divine v. State, 279 Ala. 291, 184 So.2d 628; Peaden v. State, 275 Ala. 72, 152 So.2d 136.

The testimony of the absent witness was cumulative to that of the other two confessed participants in the robbery that appellant was not present. There was no abuse of discretion and the trial court did not err in denying the motion for continuance.

The other matter to consider is the question of an illegal search and seizure relating to the money order blanks.

A mere observation of that which is in full view is not a search, and testimony concerning such objects is not inadmissible as an illegal search or seizure. Yeager v. State, 281 Ala. 651, 207 So.2d 125; Kelley v. State, 39 Ala.App. 572, 105 So.2d 687. And in a robbery case where an officer discovered a registration card lying face up on the metal stripping over which the automobile door closes, the Supreme Court of the U. S. said, in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067: "It has long been settled that objects falling in the plain view of

an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

Here, part of the money order blanks, which had been reported stolen, were in full view and the edges of some of the rest of them were visible. The trial court did not err in allowing this testimony to be admitted in evidence.

We find no reversible error in the record.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.