239 So.2d 318

**Willie James HENRY**

v.

**STATE.**

**I Div. 16.**

Court of Criminal Appeals of Alabama.

Sept. 15, 1970.

176

Oliver J. Latour, Jr., Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

ALMON, Judge.

Willie James Henry appeals from a judgment of conviction of robbery. His sentence was fixed at ten years in the penitentiary.

On December 27, 1967, between 6:00 and 7:00 o'clock P.M., two men wearing stocking masks entered Bailey's Superette No. 2 in Toulminville. Major Bailey, the owner of Bailey's Superette, heard someone scream, looked up, and saw a man with a stocking over his face pointing a pistol at him. Although the gunman said nothing, Bailey assumed that he was going to shoot, so he did not look at the gunman and could not later identify him. Bailey turned his head, threw his hands up and fell to the floor. The gunman then pointed at some object in Bailey's pocket. Bailey then put what money he had on the floor. The men took the money, approximately $135.00, and left. Others were present during the robbery, including Clara Miller who worked for Bailey.

At the beginning of the trial, appellant's counsel moved for a continuance because a defense alibi witness, Jennie Henry, was not present in court. He asserted that if present she would testify in substance that she was with appellant the afternoon and evening of the robbery. The missing witness is appellant's sister. Both appellant and his attorney had no idea where she was and could not assure the court that she was in this State.

The matter of continuance in a criminal case is addressed to the sound discretion of the trial judge and the exercise of that discretion will not be disturbed on appeal unless clearly abused. Peaden v. State, 275 Ala. 72, 152 So.2d 136; Divine v. State, 279 Ala. 291, 184 So.2d 628; Segers v. State, 283 Ala. 694, 220 So.2d 882.

Moreover, the present motion did not disclose whether the witness was available or within the jurisdiction. Williams v. State, 224 Ala. 6, 138 So. 291.

Also the witness's testimony would have been cumulative since appellant's mother testified that appellant was with her during the time the robbery was committed. *Divine,* supra.

The trial court denied appellant's pre-trial motion to require the prosecution to produce for appellant's inspection the following:

"1. Any document allegedly signed by Defendant.

"2. Any statement allegedly made by Defendant during his interrogation by the Mobile Police.

"3. Any alleged waiver of any constitutional rights allegedly executed by Defendant.

"4. Any articles taken from Defendant's person after his arrest.

"5. Any articles taken from Defendant after he was brought to the Mobile City Jail on the charge which is the basis of this case.

"6. Any statement allegedly made by Lincoln Hurd.

"7. Any statement allegedly made by any co-defendant of Defendant herein."

The only item introduced at trial which came within the scope of the above motion was a written waiver signed by appellant which waived his right to presence of counsel at a lineup conducted by police officers. Later in the trial, appellant quite freely testified that he signed the waiver. Before the waiver was introduced in evidence, appellant's attorney had ample opportunity to examine it.

Consequently, we are of the opinion that the trial court's denial of the motion to produce was not prejudicial to appellant and no error resulted. See Smith v. State, 282 Ala. 268, 210 So.2d 826; McCants v. State, 282 Ala. 397, 211 So.2d 877; and Sanders v. State, 278 Ala. 453, 179 So.2d 35, where our Supreme Court has held the denial of similar motions free from error.

Two lineups were conducted in an effort to identify the robbers. Appellant was not present at the first lineup and witness Clara Miller pointed to one of the men as resembling appellant but made no identification. At the second lineup, she identified appellant as the robber carrying the pistol. She had seen the appellant six or seven times before the robbery when she was working in Bailey's Superette.

Before any in-court identification was admitted, the court held a rather lengthy hearing out of the presence of the jury. At that hearing the prosecution introduced the following waiver:

"WAIVER OF RIGHT TO HIRED OR APPOINTED COUNSEL PRESENT AT LINEUP

"My name is Willie James Henry, I am in the Mobile Police Station. I have been introduced to Walter Pickett, Hubert Bell, Edwin Pennington, who have identified themselves as police officers of the City of Mobile, Alabama.

"I understand that several witnesses are to come to the police station to observe me and determine whether I am responsible or not for the crime of Robbery. I understand that I have a right to consult with an attorney and have one present as a witness at the lineup. I understand at the lineup I will be with other persons and will be observed for purposes of identification.

"I have been told that I have no right to refuse to participate in the lineup, but do have a right to consult an Attorney about it and have him present during the lineup. That if I do not have the funds to hire an attorney, a Judge will appoint a free one to represent me at this lineup.

"Understanding all of this, I waive my right to consult with or have present an attorney either payed for or free, and agree to proceed with the lineup.

"Willie James Henry

"DATE AND TIME: Jan. 4, 1968
6:45 P.M.

"WITNESSES:

"Edwin A. Pennington

"Walter Pickett".

Appellant confessed his participation in the robbery after being given proper warnings in conformity with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The *Miranda* warnings were given to appellant prior to his signing the waiver of counsel at the lineup.

We conclude on the record before us that it was not error for the trial court to find that appellant knowingly and intelligently waived his right to counsel at the lineup. United States v. McKenzie, 3 Cir., 414 F.2d 808; Chandler v. State, 283 Ala. 29, 214 So.2d 306; Frye v. United States, 5 Cir., 411 F.2d 562.

It is further asserted that, even though appellant waives his right to counsel, the lineup was so suggestive in nature as to be violative of the due process clause of the Fourteenth Amendment of the U.S. Constitution.

Even though the instant lineup was subsequent to the effective date of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct.1951, 18 L.Ed.2d 1178, the U.S. Supreme Court held in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402, as follows:

"* * * But in declaring the rule of *Wade* and *Gilbert* to be applicable only to lineups conducted after those cases were decided, we recognized that, judged by the 'totality of the circumstances,' the conduct of identification procedures may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law. 388 U.S., at 302, 87 S.Ct., at 1972. See Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968); cf. P. Wall, Eye-Witness Identification in Criminal Cases; J. Frank & B. Frank, Not Guilty; 3 J. Wigmore, Evidence § 786a (3d ed. 1940); 4 id., § 1130.

"Judged by that standard, this case presents a compelling example of unfair lineup procedures. In the first lineup arranged by the police, petitioner stood out from the other two men by the contrast of his height and by the fact that he was wearing a leather jacket similar to that worn by the robber. See United States v. Wade, supra, 388 U.S. at 233, 87 S.Ct. at 1935. When this did not lead to positive identification, the police permitted a one-to-one confrontation between petitioner and the witness. This Court pointed out in *Stovall* [v. Denno] that '[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.' 388 U.S. [293] at 302, 87 S.Ct. [1967] at 1972 [18 L.Ed.2d 1199]. Even after this the witness' identification of petitioner was tentative. So some days later another lineup was arranged. Petitioner was the only person in this lineup who had also participated in the first lineup. See Wall, supra, at 64. This finally produced a definite identification.

"The suggestive elements in this identification procedure made it all but inevitable that David would identify petitioner whether or not he was in fact 'the man.' In effect, the police repeatedly said to the witness, 'This is the man.' See Biggers v. Tennessee, 390 U.S. 404, 407, 88 S.Ct. 979, 980, 19 L.Ed.2d 1267 (dissenting opinion). This procedure so undermined the reliability of the eyewitness identification as to violate due process."

There was testimony by police officers that there were five participants in the lineup, including the appellant. The participants were as follows: (1) Johnny Bullard, born March 17, 1946, colored male, weight 135 pounds, height five feet and six inches; (2) John L. Brown, born December 5, 1944, colored male, weight 137 pounds, height five feet and nine inches; (3) Willie James Henry (appellant), born September 8, 1947, colored male, weight 169 pounds, height five feet and nine or ten

inches[1]; (4) Lincoln Heard, born February 9, 1946, colored male, weight 150 pounds, height five feet and nine inches; and (5) Levester Brannon, born March 19, 1950, colored male, weight 159 pounds, height five feet and nine inches.

Judging the present case by the standards in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and *Foster*, supra, we conclude that the lineup or pre-trial confrontation was far from being overly suggestive or so arranged as to make the resulting identification virtually inevitable.

Detective Buell Craven of the Mobile Police Department assisted in the investigation of the robbery. On cross-examination, he was asked if he had made a written report the night of the robbery. He testified that he did and on further questioning it was revealed that he had reviewed the report prior to testifying. We quote from the record:

"Q. Did you make a written report that night?

"A. Possibly that night or the next day; I'm not sure, but—

"Q. Do you have that with you?

"A. I have it in the back.

"Q. You've reviewed it, haven't you?

"A. Sir?

"Q. You've reviewed it, haven't you?

"A. Yes, sir.

"Q. Has it refreshed your recollection any?

"A. I remember about what I wrote in the report at the time.

\* \* \* \* \* \*

"MR. LATOUR: My question, Officer, was whether or not by reviewing that report you did, in fact, refresh your recollection and it did, in fact, aid you in testifying here today?

"A. No, sir. I would say not.

"Q. You would say and tell the Court that you would be able to testify about the facts and circumstances of your investigation without that report?

"A. I believe I would, yes, sir."

Appellant's motion to see the report was denied.

■ We understand the law to be that the court's refusal to permit defense counsel to see and examine a report used by a witness on the stand to refresh his memory would constitute reversible error. McMurtrey v. State, 44 Ala.App. 658, 219 So. 2d 414; Benefield v. State, 39 Ala.App. 302, 100 So.2d 334.

■ Here the witness did not have the report in the courtroom. Furthermore, he testified in substance that he could remember the facts independent of the report.

We are urged to extend the above rule to include the production of reports or memoranda, etc., reviewed before coming to court to refresh the witness's recollection. We are of the opinion that the present record would not support such a holding even if we were so inclined. This subject is discussed in 7 A.L.R.3d at pages 244 and 247.

For the foregoing reasons, the judgment appealed from is due to be and the same is hereby

Affirmed.

---

1. The report showed appellant's height to be six feet and eight inches; however, there was testimony that this was a typographical error. This fact was not disputed by appellant at trial. Moreover, the trial judge had ample opportunity to observe appellant during the trial.