272 So.2d 615

**Therendall MOORE**

v.

**STATE.**

1 Div. 181.

Court of Criminal Appeals of Alabama.

Jan. 23, 1973.

Thomas M. Haas, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of robbery by a jury in the Circuit Court of Mobile County and was sentenced to a term of ten years in the penitentiary. He was represented by a court-appointed attorney in the trial below and is here with a free transcript and another attorney represents him on this appeal.

Around four o'clock a. m. on August 27, 1970, a robbery occurred at the Kayo Service Station located at 2116 Stephens Road in the City of Mobile. According to the testimony, appellant and two other men took part in the robbery. One of the other men appeared in front of the service station with a rifle in his hand, fired the gun several times and shouted, "Don't move, don't move." Moments later appellant appeared and entered the station and went to a storage room and started throwing boxes of cigarettes out the door to a confederate. The man with the rifle shouted to appellant to "get the money, get the money." Appellant walked up to the station attendant and started patting him on the chest and on his pants pocket. The attendant had eighteen (18) dollars in his upper left shirt pocket and appellant took the money, put it in his pants pocket, returned to the store room, and started throwing out more boxes of cigarettes. In a few minutes the man with the rifle said, "Here come the cops, come on, come on", and he and the other man, who had been picking up the cigarettes ran from the station. Appellant ran out the door of the station pursued by the attendant who caught him. Appellant struck the attendant in the face, knocking his glasses off, but the attendant got him around the neck and held on to him. While they were tussling, a police officer arrived and asked what was going on. The attendant said he was being robbed and the officer handcuffed appellant and put him in the back seat of the squad car. Another officer arrived and upon being told two men ran away, he started searching for them. He returned a few minutes later with another suspect, who was put on the same seat with appellant. A few moments later appellant and the other suspect were observed passing money back and forth. The tendencies of the evidence was that appellant was trying to place the fruits of the robbery on the other suspect, who was just not going to have any part of it.

When the officer placed appellant under arrest for robbery and told him to get in the car, appellant said he wasn't getting in the car, that he wasn't taking a part in the robbery, that he was there just to use the bathroom. The officer was forced to subdue him and place him in the car. The officer then gave appellant the *Miranda* warnings. When the other officer returned to the scene, he went to the car where appellant was and he also gave him "his rights" and appellant said, "I will talk

to you now." The officer asked him who was with him and appellant said Jack McCall. The officer then went through his pockets and found four one dollar bills.

The service station attendant and both officers testified they smelled the odor of alcohol on appellant, his eyes were bloodshot, his tongue was thick, and he staggered some when he walked. However, the officers were positive that he was not so intoxicated that he could not understand the *Miranda* warnings.

Appellant testified that on the late afternoon before the alleged robbery he had gone to some club and consumed a pint or more of wine. From the club he went to the home of his girlfriend where he and another man continued to drink wine—they were drinking Red Dagger. He could not recall how much Red Dagger he drank. It could have been three or four fifths and maybe more. Later in the night he went to sleep, or passed out on the sofa. The last thing he remembered was getting to the sofa. The next think he remembered was the officer putting handcuffs on him. He denied all knowledge of the robbery and as to how he got to the scene. He claims no recollection of two officers giving him "his rights".

The only real claim of error was the denial of a motion for a continuance on the ground that counsel had only ten minutes to prepare his defense.

The record shows that appellant was indicted on the fifth day of February, 1971. Before arraignment the court ascertained that appellant desired the assistance of counsel and was not financially able to employ a lawyer. Whereupon the court appointed two members of the Mobile Bar to represent and defend appellant. The next day, February 25, 1971, appellant was arraigned with trial counsel present who waived the reading of the indictment and entered a plea of not guilty. The trial date was set for March 22, 1971.

On the day set for trial, the court asked the state and the defense if they were ready to proceed. Both announced ready. The court gave instructions to the witnesses as to what was expected of them during the progress of the trial. He then asked the witnesses if they had any questions. The mother of appellant said,

"Judge, I am Therendall's mother, and I paid Lawyer Haas $190.00 to represent my son . . ."

The court excluded the jury and appellant's appointed counsel moved for a continuance based upon the fact that Mr. Haas was then engaged in the trial of another criminal case in another courtroom. The court then explained to appellant's mother that Mr. Haas had elected to try another case. The respective motions are as follows:

" * * * I would like to make the motion for a mistrial based upon the fact that this lady, Mrs. Lulu Belle Smith, who is the mother of the defendant, Therendall Moore, came in front of Your Honor when he asked the question whether or not she had any questions, and made the statement which she did, that she had hired another counsel and had paid him some fee. This was in the presence of the Jury and I think it would greatly prejudice the Jury and Your Honor said he didn't know whether the Jury understood what she was saying or not. Well, I think there is that possibility that they did, and that this will lend great prejudice to the trial of the defendant.

"THE COURT: In what manner?

"MR. FRIEDLANDER: Pardon?

"THE COURT: In what manner will it?

"MR. FRIEDLANDER: I think it will greatly prejudice them. They know that this lady has hired another attorney to represent him and Your Honor has not given him the opportunity to have this other attorney present.

"THE COURT: Well, Mr. Friedlander, as I stated to you earlier, Mr. Haas is not here and is not present.

"MR. FRIEDLANDER: Mr. Haas has been hired and has been paid his fee and been retained by this lady to represent Therendall Moore, the defendant in this case.

"THE COURT: I understand that. What I'm saying, Mr. Haas is not here, Mr. Friedlander.

"MR. FRIEDLANDER: No, sir, he is trying another case in the Circuit Court of Mobile County.

"THE COURT: Of his own voluntary act because at that time, as I understand from the record, and I want this to be a part of the record too, that Mr. Haas is assisting the Public Defender's Office in that trial."

*     *     *     *     *     *

"MR. FRIEDLANDER: This is another further ground of my motion, Your Honor. Just like her denial of her attorney. It's another ground and I think it's not fair to this defendant, I've talked with this man one time, and as further grounds for my motion, I've been to the jail one time to talk to this man for maybe ten or fifteen minutes because all along, I was anticipating that Mr. Haas was going to represent the defendant. When I was first appointed, I got together with Mr. Loveless and I said I'll write the lady and we'll get her in and talk to her, that's the defendant's mother, Mrs. Moore—uh—Mrs. Smith. She called me as soon as she got the letter and said, 'No, Lawyer Haas has been retained by me to represent her son.'

"THE COURT: When was this now?

"MR. FRIEDLANDER: Well, I wrote her the letter and it went out on a Thursday, I think, and she called me on Monday, I imagine as soon as she got the letter. At that time and there is a letter in the Court file, I wrote a letter to Mr. Haas and a carbon copy to Mr. Mandeville  .  .  .

"THE COURT: When were you appointed?

"MR. FRIEDLANDER: I wrote her a letter on March 2nd. I was appointed on February 25th. I came over here on March 2nd, I believe was the—no, it was on the 25th. Then I wrote her a letter and she called me that Monday after the letter went out and said that she had hired Mr. Haas, so I let the matter lie a little bit, but I didn't  .  .  .

"THE COURT: Let me ask you this, what day were you appointed, you and Mr. Loveless?

"MR. FRIEDLANDER: February 25th, Your Honor.

"THE COURT: She didn't call you until last Thursday or you didn't get any notice from her until last Thursday that she had hired someone else?

"MR. FRIEDLANDER: I wrote her March 2nd. Today is March 22nd. She called me about four or five days after the letter went out, so about the 7th or 8th was when she called me. Here we are some two weeks later and we're in trial. At that time she told me Mr. Haas represented her son.

"THE COURT: For the record, let it be known that there has been no appearance by Mr. Tommy Haas in this Court before today and I would deny your motion on that ground.  *  *  *"

After considerable colloquy between the court and appointed counsel the court overruled and denied the motion for a continuance and also denied a motion for a mistrial.

Appellant's counsel had twenty-six (26) calendar days from the date of appointment to the date of trial in which to prepare for the trial.

■ The general rule concerning the granting of a continuance seems to be well settled in that it is entirely discretionary with the trial court and absent abuse of this discretion, denial of such motion is not reversible error. Avery v. State, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377, affirming 237 Ala. 616, 188 So. 391; Arant v. State, 232 Ala. 275, 167 So. 540; Siebold v. State, 287 Ala. 549, 253 So.2d 302. Further, many cases point out that this discretion must be "clearly abused", Segers v. State, 283 Ala. 694, 220 So.2d 882, or they use terminology such as "gross abuse", Smith v. State, 282 Ala. 268, 210 So.2d 826.

In Bertrand v. State, 46 Ala.App. 117, 238 So.2d 914, this court had occasion to treat an identical issue. There we said:

"The only point raised by brief on appeal which we deem substantial is that the trial judge abused his judicial discretion in denying Bertrand a continuance because Bertrand's mother had shortly before the trial hired a lawyer in addition to those theretofore appointed by the court.

"The defendant was arrested in Mobile February 1, 1969. The indictment was returned on the 18th day of February, 1969, and the defendant committed on the indictment the same day.

"A minute entry of February 21, designated 'Pre-Arraignment,' shows an enquiry by the trial judge as to whether or not the defendant wished appointed counsel and that Bertrand did so wish. The court then appointed counsel to represent him. Later that same day the defendant was formally arraigned. The trial took place March 12, 1969.

"[1] In this posture we do not consider that the trial judge abused his discretion in not delaying the case so that the Mobile counsel whom Bertrand's mother had apparently hired could appear.

"Concededly a lawyer cannot ˙ ethically enter a case until he has been retained. The fact that he is being sought when other lawyers are already in the case is for him to weigh as to whether he will have time to take over where they leave off. Moreover, he should normally presume that the other lawyers have done some spade work on this case and that he will not be plowing all new ground.

"[2] Thus ordinarily counsel who supplants or supplements other counsel, who have already had ample time to get ready for trial, should not expect to ask for a continuance." See also Minniefield v. State, 47 Ala.App. 699, 260 So.2d 607.

■ From the record, we are unconvinced that appellant was without adequate representation. Appellant's court-appointed attorney examined witnesses in his behalf, made strenuous objections at strategic points throughout the trial and otherwise presented a good faith defense. Furthermore, there was no showing made that the court-appointed attorney would have called additional witnesses or produced additional evidence had he had more time. Under these circumstances we do not believe that appellant was denied the benefit of counsel under the Fourteenth and Sixth Amendments to the United States Constitution or under Article I, Section 6 of the Constitution of Alabama.

In Duncan v. State, 46 Ala.App. 732, 248 So.2d 771, this court held that eleven days' time was not insufficient preparation time and it was not an abuse of the court's discretion to deny a continuance. Also in Walker v. State, 265 Ala. 233, 90 So.2d 221, our Supreme Court held that where counsel only had ten days to prepare, it was not an abuse of discretion to overrule a motion for continuance.

■ Similarly, we believe the trial court stayed within the permissible limits of its discretion in refusing appellant's motion for a mistrial. Generally speaking, a trial judge's denial of a motion for mistrial will not be disturbed unless there has been

a clear abuse of discretion. Ala.Code Tit. 30, § 100 (1940); Hallman v. State, 36 Ala.App. 592, 61 So.2d 857; Franks v. State, 45 Ala.App. 88, 224 So.2d 924 (1968). We are of the opinion that there was no "manifest necessity" for the trial judge to declare a mistrial as required by Tit. 30, § 100, supra. Indeed, there was no indication that the jurors even heard the appellant's mother make the statement concerning her having hired another attorney much less that the remark was understood and was prejudicial. Moreover, when the judge realized what her statement might imply, he immediately ordered the jury removed and admonished appellant's mother against further statements. The trial court did not abuse its discretion in denying the motion for mistrial.

This case is due to be affirmed.

Affirmed.

All the Judges concur.