273 So.2d 484

**David BAZZELL, alias**

v.

**STATE.**

**3 Div. 180.**

Court of Criminal Appeals of Alabama.

Feb. 20, 1973.

C. Lanier Branch, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David Lee Weathers, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was put to trial in the Circuit Court of Montgomery County, Alabama, on a two-count indictment charging burglary and grand larceny. The jury returned a general verdict of guilty and he was sentenced to a term of five (5) years in the penitentiary.

Omitting the formal parts the indictment reads as follows:

"COUNT I: The Grand Jury of said County charge that, before the finding of this indictment, DAVID BAZZELL, Alias D. D. BRAZELL, alias DAVID LEON BRAZELL, whose name is to the Grand Jury otherwise unknown, with intent to steal, broke into and entered the shop, store or warehouse of Lee Appliance Co., Inc., a corporation, in which goods, wares, merchandise or air conditioners, things of value, were kept for use, sale or deposit;

"COUNT II: The Grand Jury of said County further charge that, before the finding of this indictment, DAVID BAZZELL, alias D. D. BRAZELL, alias DAVID LEON BRAZELL, whose name is to the Grand Jury otherwise unknown, feloniously took and carried away from a storehouse, warehouse, shop or office

1 Freidrich 6,000 BTU air conditioner, Model SP85–11, of the value of $167.00, the personal property of Lee Appliance Co., Inc., a corporation, against the peace and dignity of the State of Alabama."

The evidence is undisputed that the warehouse of Lee Appliance Company, Inc., a corporation, located at 1223 Bell Street, Montgomery, Alabama, was broken into shortly after midnight on June 26, 1971, and two Freidrich air conditioners were removed from the building. Entrance was gained through a broken glass door. Mr. Lee, the owner of Lee Appliance Company, testified that two such air conditioners were delivered to his warehouse shortly before the burglary and they were placed inside the warehouse in their original crates. When the plate glass door was broken, the burglar alarm was sounded and he was summoned to his warehouse and observed the broken glass door and upon entering, he immediately saw the two air conditioners, in their original crates, were missing. He saw one of them at the Montgomery Police Department around two-thirty or three o'clock A.M. on the day of the burglary. The crate had a tag attached to it giving the model number and the serial number of the unit and it was addressed to the Lee Appliance Company, Montgomery, Alabama, and showed the name of the shipper as Freidrich, Incorporated, San Antonio, Texas. He testified that the Lee Appliance Company was the only Lee company in Montgomery and he had the exclusive dealership for Freidrich air conditioners in this County. The shipping tag bore the Model Number SP85–11, the same number set forth in the indictment.

■ A few minutes before the burglar alarm sounded, a Mr. Thomas Jefferson Burnett, who lives at Number 7 Crenshaw Street, and from whose back door one has a clear view of the warehouse in question, testified that he observed two or three young white men pass in front of his house. These men had on black gloves and short shirts and their furtive looks and actions aroused his suspicions and he called and

reported this to the police. A few minutes after making this call, he heard glass being broken and again called the Police Department. Detectives from the Department responded and saw the broken glass door and in surveying the immediate neighborhood, they discovered a large crate in the grass near the corner of a house. They set up a "stake out". In a few minutes they saw two individuals pick up the crate and start down Herron Street. The officers gave chase and the two men dropped the crate and fled the scene, but not before one of the detectives recognized appellant. The officers made a house to house search for appellant and his companion after obtaining permission of the occupants of said houses. There were some vacant houses, and the officers searched these houses also. The officer who knew and recognized appellant also knew that he had a room in the house which belonged to Mary Blow and was then and there occupied by her son, Homer Blow. Homer Blow gave the officers permission to thoroughly search the entire house pointing out to them the room in which appellant slept. Appellant could not be found. About an hour later the officers returned to the Blow house for another search and found appellant in his room and placed him under arrest. He told the officers he had been in his room all night. The officers did not have a warrant for appellant's arrest. They knew, however, that a felony had been committed, i. e., the burglary of the warehouse. They observed appellant in close proximity to the warehouse when he and his companion were in the act of removing the crated air conditioner. At the approach of the officers, the suspects dropped the crate and took flight. The late hour, appellant's flight, his temporary escape with the officers in "hot pursuit", all considered, furnished ample or reasonable cause for believing that the suspect committed the felony. Appellant's arrest without a warrant was legal. Simmons v. State, 44 Ala.App. 212, 205 So.2d 576; Maples v. State, 44 Ala.App. 491, 214 So.2d 700; Ingram v. State, 45 Ala.App. 108, 226 So.2d 169.

 

Appellant was represented in the court below by a court-appointed lawyer, Honorable C. Lanier Branch, who also represents him on appeal. Appellant's trial attorney put up a vigorous defense in his behalf and was complimented by the trial judge for his aggressiveness and resourcefulness, and in these accolades we join. Appellant's attorney, in brief, states with commendable candor that the various objections made by him during the trial, and the rulings thereon, would not be discussed, "as it is felt they do not constitute error sufficient to prejudice this defendant's substantive rights." Appellant had his day in court with an able, competent and diligent lawyer and that is all he should expect and certainly all he is entitled to under due process.

Appellant presses for a reversal because of the actions of the trial judge in putting him to trial after four (4) P.M. on the day his case was set, and would continue in the trial of the case "as late into the night as we can and get through with it." Title 13, Section 117, Code of Alabama 1940, prescribes the times for opening and closing the courts for the trial of jury cases. This section clearly states that the court shall "in any event not engage in the trial of such cases later than seven o'clock p. m. each day, except by agreement of counsel." We of the ancient bar learned the hard way that this section does not mean what it says. We have been forced to try past midnight on many occasions and then wait on the jury's verdict at day break. With raw nerves, hot tempers, curse words reduced to sub-monotones, we endured the hours to find that all was well when the foreman said, "not guilty." This section is directory only. McNutt v. State, 23 Ala. App. 43, 121 So. 432; Tidwell v. State, 41 Ala.App. 296, 130 So.2d 206; Rogers v. State, 264 Ala. 500, 88 So.2d 685.

The trial court gave appellant two options as to the time to begin the trial of his case: (1) strike the jury and proceed at once or (2) strike the jury, let them separate overnight (defendant consenting),

and begin the trial at 9:00 A.M. the next day. Appellant elected the first option. The granting or refusing continuances, even over night, is largely within the trial court's discretion, and will not be reviewed, unless the discretion is clearly abused. Ballard v. State, 25 Ala.App. 457, 148 So. 752; Henry v. State, 46 Ala.App. 175, 239 So.2d 318.

As in duty bond, we have searched the record for errors affecting the substantial rights of appellant and have found none. The case is due to be and is hereby affirmed.

Affirmed.

All the Judges concur.