LEIGH M. CLARK, Supernumerary Circuit Judge.
Appellant was convicted of robbery and sentenced to imprisonment for twenty-five years.
No question is raised as to the sufficiency of the evidence to support the verdict, and we see no reasonable basis for such a question.
*135 The robbery occurred about 2:00 A.M. July 10, 1975. The victim was the internal auditor at the Town House Motel at 1061 Government Street in Mobile. The robbers escaped, and no arrests had been made for the robbery before about 11:30 P.M. August 18, when an automobile being driven by defendant was stopped by the police in Mobile. One of the men in the automobile fled the scene. Under the back of the driver’s seat was a sawed-off shotgun. The victim of the robbery identified defendant as one of the robbers; he identified the shotgun found in defendant’s automobile on August 18 as the shotgun used by defendant while he and his partner were robbing him; he identified one of the men in the back seat of the automobile on August 18 as the defendant’s partner in the robbery; both were arrested and imprisoned.
For obvious reasons, there was no evidence on the trial of the case to show the reason for the stopping of the automobile, the arrest of defendant and the search of his automobile. The reason therefor and the circumstances thereof were shown by the evidence presented on a pretrial motion to suppress the evidence as to the gun. The circumstances were that a few minutes before the arrest was made, a robbery had occurred at the Travelers Inn at 1812 St. Charles Avenue in Mobile. The victim reported the robbery by telephone to the Police Department. Her report in detail was instantly transmitted over the police radio system and received by the occupants of at least three police vehicles, who converged at the scene of the arrest at approximately the same time. The officer who ordered the car to stop observed that one of the men in the back seat of the automobile matched the description, given by the victim of the robbery, of one of the robbers. Before the car was searched, one of the officers had received via police radio system, information that a witness to the robbery had described the automobile used by the robbers in leaving the scene of the crime in a way that matched the automobile being driven by defendant at the time his automobile was stopped. In the course of “patting down” the men in the automobile, forty-two dollars and thirty-nine cents in twenty-seven one dollar bills and assorted currency was taken from the pockets of one of the men in the back seat of the automobile; this was the exact amount that the victim had just reported was the amount taken in the robbery.
The motion to suppress evidence of the gun charged in effect that it was obtained as a result of an illegal arrest, search and seizure. The overruling of the motion is made one tine of a two-pronged attack upon the judgment.
At the time the automobile was searched, one or more of the officers participating in the arrest and search had received information via radio from the victim of the Travelers Inn robbery describing the gun used by one of the robbers. The gun found under the back part of the front seat of the automobile matched the description of the gun described by the victim of the Travelers Inn robbery, as well as the gun described by the victim of the robbery made the basis of this case. There was another gun in the back seat of the automobile.
There was abundant probable cause to justify the officer stopping and questioning the occupants of the automobile and for arresting defendant for the robbery of the Travelers Inn. At the time the automobile was stopped, it was known by the officer stopping it that an armed robbery had taken place a few minutes before, that the automobile was at a place and time that dovetailed with the place and time of the robbery, that two men in the back seat of the automobile matched the description in material respect. This justified and made it the duty of the officer to stop the automobile and investigate. That the officers required the occupants of the automobile to get out; that they “patted” them down to determine whether they were armed, was clearly within their rights, for their own safety. Dunaway v. State, 50 Ala.App. 200, 278 So.2d 200, cert. denied, 291 Ala. 93, 278 So.2d 205. There was more than enough to justify the warrantless search of the auto *136 mobile when the officers obtained information, in addition to that which they had when the automobile was stopped, that in the pockets of the persons in the back seat was the exact amount of money taken in the robbery and one of the persons in the automobile had fled from the scene when the automobile was stopped. Crane v. State, 55 Ala.App. 619, 318 So.2d 315. With such information and the finding of a sawed-off shotgun under the back part of the driver’s seat that matched the description given by the victim of the gun used in the robbery, when added to all of the other information received by the officers, no room is left for doubt that there was probable cause for arresting defendant, as well as the others in the automobile, and placing him in custody. Appellant’s reliance on Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, is misplaced. There, according to the majority opinion, the arresting officer was proceeding under an invalid warrant based on an informer’s tip and “was not possessed himself of any factual data tending to corroborate the informer’s tip.” 401 U.S. at 568, 91 S.Ct. at 1037.
After the jury was selected and had been excused to go to the jury room, there was a colloquy among the court, counsel for both sides, and defendant relative to whether the jury would be allowed to separate during the course of the trial. After defendant had made it known that he was not willing for them to separate and the court ruled that the jury would be kept sequestered, counsel for the State suggested that they proceed with the motion of defendant to suppress the testimony hereinabove discussed out of the presence of the jury. Thereupon the following occurred:
“MR. FRIEDLANDER: Judge, I would like to go into my motion before, first of all.
“THE COURT: All right.
“MR. FRIEDLANDER: First of all, Judge, I would ask for a-. Before we struck the Jury, I reserved the right to ask for a motion, and I would ask the Court to declare a mistrial in this case and to ask for a continuance of the case until later on in the week or until next week, until other counsel can be employed by Mr. Hoppins, or appointed by the Court, to represent Mr. Hoppins. The basis of my motion is the fact that I don’t feel that I have been able to get any cooperation out of Mr. Hoppins, and I don’t think Mr. Hoppins feels that he has been able to get cooperation out of me. The last time the case was set for trial, all of the Co-Defendants entered pleas of guilty, and on a recommendation of 10 years in the penitentiary, were given 10 years, I believe. They had more than one case against them, also, I believe. Today, before the Court we have a case for which we struck the Jury, and we have another case pending against Mr. Hop-pins, a robbery case, each one of these cases carries a minimum of 10 years and a maximum of life in the penitentiary. I have recommended to Mr. Hoppins that he accept the recommendation of the District Attorney in these cases, which was going to be a ten-year sentence in each case to run concurrently, serving that time in the penitentiary. He has been in jail for about seven months already, and I explained to him that he would be given credit for that time that he’s been in the jail. He does not want to accept that offer, and so I told him that I am prepared to try the case this morning. He tells me that he does not want to try the case, does not want me to represent him any further, wants to get some other counsel, and also wants to present a motion on his own. I think it’s a Habeas Corpus motion. I haven’t looked at the Petition, he’s got them spread out all over the table. I advised his father to advise Glennon here, and I advised Glennon also not to bring out all these items and spread them all over the table, but as your Honor sees, he seems to have seen fit to do so. I had advised him that I think it would be better for the Jury to separate, but he has advised the Court that he does not wish the Jury to separate, and he is going against every bit of advice that I have offered to him, and I *137 do not think that I can proceed with the trial of this case without the help of my client here. I don’t think he is able to, I don’t think he really appreciates what is happening here today, or what is going to happen to him if he does get convicted. I, at the last setting of the case, thought he had some problems mentally, and requested the Court filed a motion for psychiatric examination, but Searcy sent him back, and I believe on their report they state that he knows the difference between right and wrong, and is able to aid in his defense, but I do not feel at the present time that he is able to do so. On that basis, I would ask the Court to declare a mistrial and grant a continuance until next week when there will be a different Jury Venire, which should be plenty of time for his parents to retain counsel or for appointed counsel to represent him at that time.
“THE COURT: I am going to deny your motion.”
Appellant’s counsel — not the same counsel who represented him as counsel employed by his father from the time of defendant’s preliminary hearing to and through the trial of the case — insists that the court was in error in denying the motion hereinabove quoted. We see nothing in the record prior to such motion to the effect that defendant or defendant’s counsel had reserved the right to interpose such a motion after the jury had been selected. It is to be noticed that counsel stated, “I reserve the right to ask for a motion.” Whether he meant by that that he had made it clear to the court and opposing counsel that he reserved a right to move for a mistrial or a continuance after the jury had been selected, we do not know, but we hardly see how there could within reason have been such an understanding. The procedure here bears resemblance to, in some respects, and dissimilarity with, in other respects, the procedure considered in Moore v. State, 49 Ala.App. 408, 272 So.2d 615. In Moore, counsel had been appointed for twenty-six calendar days prior to trial. In this case, he had been privately retained and active as counsel for defendant for seven months, during which time he had participated as defendant’s counsel on the preliminary hearing and on at least one previous setting of the case for trial; he had represented defendant on arraignment and on a motion to be treated as a youthful offender; he had investigated the case and. had conferred with defendant time and again; he had filed a motion and obtained an order for a psychiatric examination of defendant, which had been made; in evident anticipation of a trial, and not a continuance or mistrial, he had discussed with defendant the advisability of the jury being allowed to separate during the trial. Nothing was presented to the court to the effect that defendant would retain other counsel by the following week or at any time within the then near future. In fact, there was nothing definite presented to the court to the effect that any effort would be made to employ other counsel. No request was made that defendant be allowed to appear in propria persona.
Defendant had the right to employed counsel of his choice; he also had the right to defend himself. He had evidently been attempting to represent himself to some extent and had obtained some form of legal assistance from someone other than his employed attorney, as indicated by the meticulously drawn papers filed by him, which were submitted by his attorney to the accompaniment of evidence, which obviously were without merit. No point is made on appeal that there was any error in the action of the trial court in ruling adversely to defendant as to such “papers.” Furthermore, no point is made on appeal, wherein defendant is represented by appointed counsel, to the effect that the employed counsel did not adequately represent him on the trial. Even so, we have examined the record, in consideration of the question, and find no basis for any reasonable contention that he was without adequate representation of counsel. When called upon for anything he had to say before being sentenced, defendant registered complaints, but none as to counsel. He did state on redirect *138 examination in connection with his testimony out of the presence of the jury in support of the “papers” hereinabove referred to, as well as defendant’s motion to suppress testimony, that he would like to have some time to get another attorney and for his attorney to be allowed to withdraw from the case, and “to turn over all papers concerned with the case,” but this apparently was to counteract his previous undisputed testimony that the first setting of his preliminary hearing had been continued in order for him to obtain counsel and that he and his father did thereafter retain counsel in time for the next setting of the preliminary hearing. Defendant stated in the course of his testimony out of the presence of the jury that he didn’t feel that his counsel had fully investigated the case, because, “there is a witness you know nothing of.” Defendant testified in his own behalf that he was asleep in bed at the home of his mother and father at the time of the robbery for which he was tried and convicted; the record shows that his mother and father were in court at the time of the trial, that neither was called as a witness for him. His purported alibi was without any direct or circumstantial corroboration. He denied any knowledge of the presence of the sawed-off shotgun in his automobile, the automobile being driven by him, prior to his arrest for the second robbery.
We do not know the real objective of defendant or his counsel in moving for a mistrial and continuance, but there was nothing that occurred after the selection of the jury that warranted it. It is also our opinion that nothing that occurred prior to the selection of the jury required a continuance of the case, but if so, the motion should have been made before the jury was selected. We do not know what was embraced and what was referred to in counsel’s statement that he had “reserved the right to ask for a motion,” but the trial court did. It was acting well within its discretion in overruling defendant’s motion for a mistrial and a continuance. Moore v. State, supra; Bertrand v. State, 46 Ala.App. 117, 238 So.2d 914.
We find no error in the record prejudicial to defendant, and the judgment appealed from should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.