DeCARLO, Judge.
This appeal is from two convictions after a trial de novo before a circuit jury in Montgomery County on charges of indecent exposure and disorderly conduct. Both charges involved the same victim on two separate occasions. The cases were consolidated for trial after consent was given by the appellant and his attorney, and a jury found the appellant guilty on both charges. He was sentenced to six months in jail and fined $500 on the disorderly conduct charge and was sentenced to six months in jail on the indecent exposure charge.
On the morning of March 29, 1979, at approximately five minutes after eight *504 o’clock, Betty Downs was on her way to work. She walked down Washington Avenue in the city of Montgomery, Montgomery County, Alabama. As she reached the intersection of Washington and Ripley, the appellant, Thomas R. Blake, yelled to her. When she turned and looked, he stated, “Hey, come here and let me f_you.” According to Downs, the appellant had his clothes unzipped and was sitting there masturbating. She then turned and walked away.
According to Downs, the appellant was sitting in a blue Chevrolet with a gold fender. She said that when she crossed the street she copied the tag number of his automobile.
Mrs. Downs recalled that on April 2,1979, while on her way to the bank at approximately ten o’clock in the morning, she was confronted again by the appellant. As she approached the Washington Avenue branch of the Alabama National Bank, the appellant drove to the curb close to where Mrs. Downs was standing and went through the motions of masturbating.
According to Mrs. Downs, the appellant was in the same automobile, a blue Chevrolet with a gold fender. Mrs. Downs testified that she did not copy the tag number of the car on this occasion, but she recalled that the tag number and the person were the same ones previously seen by her. She identified the appellant as the man in the car.
The witness testified that after the first incident she notified the police and gave them a description of the appellant. On the second occasion, she also notified the police department. During cross-examination, she testified that she was absolutely sure the appellant was the man involved on both occasions. Also, she recalled that after the second occasion she accompanied the police to a trailer park where she identified the car and the appellant. On cross-examination, she acknowledged that there was no doubt in her mind that the appellant was the person she saw on the two occasions in question.
At the end of Mrs. Downs’ testimony, the City rested its case, and the appellant called his wife, Debra Hughes Blake, who gave alibi testimony. Mrs. Blake testified that from June of 1978 until March of 1979 her husband was unemployed and that the couple owned only one vehicle, a gold Chevrolet Impala. Further, she stated that she drove the automobile to and from work, and she specifically remembered that she had the automobile in her possession from 7:00 a. m. until 5:30 p. m. on March 29, 1979.
Bertie Chambless, the appellant’s aunt, testified that the appellant was employed by her on April 2,1979, to clean up after he and his father had reroofed a storage house. According to the witness, he had worked at her house until about 2:00 p. m. She had received a receipt from the appellant for payment for the work he had done. The receipt, which was submitted into evidence, contained the name of the appellant, the amount of $50, and the date, April 2, 1979.
The appellant took the stand in his own behalf and denied that on the morning of March 29, 1979, he was parked in a car at the intersection of Washington and Ripley. Further, he denied that on that date he exposed himself or uttered any obscene words to Mrs. Downs. Also, he denied being in the vicinity of Washington and Ripley streets on the morning of April 2, 1979, and denied making any obscene motions in the presence of Mrs. Downs on that date. The appellant reiterated that on April 2, 1979, he was working at his aunt’s house.
I
The appellant insists that the trial court committed reversible error in denying his motion for a new trial. He maintains that the prosecutor’s repeated questioning concerning prior arrests and prior convictions for crimes not involving moral turpitude were prejudicial. The questions complained of occurred in the following sequence during the cross-examination of the appellant by-the City:
“Q. Okay. Have you ever been arrested for indecent exposure before?
“MR. COLLIER: Your Honor, I am going to object to that line of questioning.
*505 “THE COURT: Sustained.
“Q. Have you ever been convicted before of indecent exposure?
“MR. COLLIER: The same thing and I move for a mistrial.
“THE COURT: Ladies and gentlemen, would you please step back into the jury room for a moment.”
At the end of the recess, the court made the following remarks:
“I’m going to deny the defendant’s'motion; however, ladies and gentlemen, let me say this: The questions that were just asked by the City Prosecutor were highly improper. We don’t know if he knows that they’ve got anything like that or don’t have anything like that. If he didn’t know he should have known that they were improper and therefore you ladies and gentlemen should totally disregard the question. The lawyers are not under oath in this case in any way. There are certain matters of procedure that should be followed and that is a matter between the Court and the lawyers and that matter will be handled; but you ladies and gentlemen should not in any way take what a question is and consider it in any way in this case. It has nothing to do with this case in any way whatsoever and you should totally disregard the question that was asked. It shouldn’t have been asked and we don’t know whether it has any basis or foundation or anything else so just forget it and I will handle it.”
Generally, the granting of a mistrial comes within the sound discretion of the trial court, and the court has widé discretion in making that determination. Only upon a showing of abuse of that discretion will an appellate court interfere with the trial judge’s determination. Shadle v. State, 280 Ala. 379, 194 So.2d 538; Scott v. State, 47 Ala.App. 509, 257 So.2d 369. See also Franks v. State, 45 Ala.App. 88, 224 So.2d 924; Moore v. State, 49 Ala.App. 408, 272 So.2d 615.
In the present case, we notice from the cited portion of the record that the trial court immediately sustained the appellant’s objections and, subsequently, charged the jury to disregard the question even though no answer had been given. Under these circumstances, we believe the trial court properly overruled the appellant’s motion for a mistrial. Lowe v. State, 48 Ala.App. 740, 267 So.2d 529; Crouch v. State, 53 Ala.App. 261, 299 So.2d 305, cert. denied, 292 Ala. 718, 299 So.2d 312; Maness v. State, 57 Ala.App. 431, 329 So.2d 120.
II
The appellant complains that he was denied a fair trial due to the improper conduct of the city prosecutor when he asked questions which suggested that the appellant had been arrested or convicted on a similar charge of indecent exposure.
As can be seen from the cited portion of the record, sustaining of the objection by the appellant was followed by curative instructions from the court.
Because of the quick, curative action by the trial judge, any prejudicial effect was removed, and the motion for a new trial was properly overruled. Scott v. State, 47 Ala.App. 509, 257 So.2d 369; Poellnitz v. State, 48 Ala.App. 144, 262 So.2d 631.
We have searched the record, and, no error appearing, the judgment and conviction of the Montgomery Circuit Court is due to be affirmed.
AFFIRMED.
All Judges concur.