The defendant and Morris Dexter Hill were jointly indicted for the first degree murder of Gordon Swearingen. A motion for severance was granted and a jury found the defendant guilty of first degree manslaughter and set punishment at five years' imprisonment. *Page 314 
 I
The first issue on appeal concerns the sufficiency of the corroboration of accomplice Hill's testimony. This issue was raised at trial by a motion for new trial. See Ward v. State, Ala.Cr.App., 376 So.2d 1112, cert. denied, Ala., 376 So.2d 1117
(1979). Section 12-21-222, Code of Alabama 1975, provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Even if we assume that Hill was an accomplice as a matter of law, Andrews v. State, Ala.Cr.App., 370 So.2d 320, cert. denied, Ala., 370 So.2d 323 (1979), the evidence was sufficient to corroborate his testimony.
Morris Dexter Hill testified that he was with the defendant on two different occasions December 6, 1978. The first was approximately 9:00 A.M. The next meeting was about 4:00 P.M. at a place called Minors Club in Macon County. It was there the defendant asked Hill for the use of Hill's gun to rob Gordon Swearingen, the deceased.
Hill and the defendant retrieved Hill's rifle from a Mr. Powell in Shorter, Alabama. They then proceeded to the Swearingen Museum, the deceased's residence and place of business, in Hill's 1977 maroon Cougar. They parked about a block and a half away from the museum and walked the remaining distance. The defendant carried the rifle. Upon reaching the back door of the museum, Hill knocked on the door as directed by the defendant. The deceased approached the door and the defendant shot him through the closed door. Hill immediately left for his automobile and there waited for the defendant who joined him shortly.
Hill took the defendant to the house of the defendant's girlfriend. Hill then went to pick up his girlfriend, Janis Johnson. They returned to the defendant's girlfriend's house where all four sat in Hill's automobile and talked. Shortly thereafter Hill, Johnson, and the defendant left for the defendant's house in Poolville. Upon arrival there the defendant had a conversation with a Mr. Butler near the automobile. Hill did not pay attention to the conversation and did not recall what was said.
After leaving the area of the Swearingen Museum, Hill and the defendant placed the rifle in the trunk of the automobile. Hill later put the rifle in an abandoned house on his grandmother's property. Hill identified State's exhibit number 4 as the rifle he gave the defendant which the defendant used to shoot Mr. Swearingen. Hill stated the rifle was removed from the abandoned house by Detective Smith and Officer Waddell Pearson of the Macon County Sheriff's Office. These facts constitute the substance of Hill's testimony.
In order to determine whether there was sufficient corroboration of the testimony of the accomplice Morris Dexter Hill, we must eliminate his testimony and examine the remaining evidence to determine if there was sufficient incriminating evidence tending to connect the defendant with the commission of the offense. Miller v. State, 290 Ala. 248, 275 So.2d 675
(1973). The corroborative evidence does not have to directly connect the accused with the offense but only must tend to do so. Andrews, supra. Corroborative evidence does not have to be strong or sufficient of itself to support a conviction. Craigv. State, Ala. Cr.App., 376 So.2d 803, cert. denied, Ala.,376 So.2d 807 (1979). Corroboration may be supplied by circumstantial evidence. Craig, supra.
Excluding Hill's testimony, there was other evidence to connect the defendant with the murder. Bascomb Duke testified that he received a telephone call from the deceased at about 7:00 P.M. on December 6, 1978. The deceased stated to Duke: "`Duke, I've been shot . . . I need help, and help at once, I've been shot by two black boys.'" Duke rushed to the deceased's aid and discovered him lying in the *Page 315 
hall next to the back door entrance to the Swearingen Museum.
Carlos Tisdale testified that he saw the defendant at the deceased's place of business twice on December 6, 1978. The first time was about 7:30 A.M. Tisdale saw the defendant and another black male standing behind an old house. He asked what they were doing but they said nothing and walked away down the road. The second time was around 9:00 A.M. The defendant was coming out of the old house when Tisdale and the deceased saw him. The deceased asked the defendant what he wanted. The defendant asked for a vegetable which the deceased did not have, walked across Highway 9, and got into a maroon colored automobile driven by another person.
Janis Johnson testified that Hill picked her up at work at 7:00 on the evening of December 6, 1978. They drove to the defendant's girlfriend's house where Johnson saw the defendant. They all talked for a while in the automobile. Johnson and Hill later took the defendant to Poolville to William Butler's trailer. The defendant got out of the automobile and engaged Butler in a conversation near the automobile. Johnson heard the defendant tell Butler "he had shot a white man."
From the above testimony we find the following facts:
 1) The deceased stated he had been shot by two black boys.
 2) Tisdale's testimony placed the defendant and another black male at the scene of the crime twice on the day of the crime.
 3) Tisdale's testimony placed the defendant in a maroon colored automobile at the scene of the crime, the same type automobile as Hill's.
 4) Johnson's testimony revealed that the defendant stated on the day of the offense that he had shot a white man.
This testimony reveals that there was sufficient and even substantial evidence corroborating Hill's testimony and connecting the defendant to the homicide. The question of the strength of the evidence was for the jury. Ward v. State, supra; Cunningham v. State, 54 Ala. App. 656, 312 So.2d 62
(1975).
 II
The defendant next contends the trial court erroneously admitted the testimony of Macon County Assistant Chief Deputy Sheriff Pearson regarding admissions made after the commission of the crime by the co-defendant, Morris Dexter Hill. He specifically contends that he was prejudiced by allowing the jury to hear Deputy Pearson testify that Hill led him to a rifle at Hill's residence.
A hearing was held outside the presence of the jury concerning whether any testimony would be allowed before the jury about the rifle. Deputy Pearson's testimony that Hill led him to the rifle came during this hearing and not in the presence of the jury. The testimony before the jury was that Hill and Lieutenant Smith were present with Deputy Pearson when Pearson first saw the rifle in a vacant house on Hill's grandmother's property. In the presence of the jury, Deputy Pearson did not testify to any statement or admission made by Hill.
The trial court ruled during the above hearing that testimony concerning the rifle would be allowed before the jury. The trial court conditioned this testimony on the State later connecting the rifle to the defendant. This condition was met when Hill testified that the defendant used the rifle to shoot the deceased. In addition, the State's expert on firearms comparison, Tellis D. Hudson, testified that the fatal shot was fired from the rifle in question.
The rifle was properly admitted into evidence. The general rule is that articles which are properly identified and which tend to show the commission of the crime or the manner in which it was committed or to elucidate some matter in issue are admissible in evidence for inspection and observation by the jury. West v. State, 37 Ala. App. 125, 65 So.2d 203, cert. denied, 259 Ala. 5, 65 So.2d 207 (1953). *Page 316 
The State's evidence also showed that Hill was an accomplice. We find in Gamble, McElroy's Alabama Evidence, § 195.03 (8), (3rd Ed. 1977): "The state may prove, against the accused, the existence after the crime, of a physical fact which tends to show the guilt of his coconspirator." McCulloch v. State, Ala.Cr.App., 338 So.2d 187 (1976).
 III
The defendant claims the trial court committed reversible error by refusing to give to the jury twenty-three written charges he requested. Each of the defendant's written charges bears the endorsement "Refused", but none bears the signature of the trial judge. Although these charges have been included in the record on appeal, § 12-16-13, Code of Alabama 1975, precludes this Court's review of them since none contained the signature of the judge. Stoudemire v. State, Ala.Cr.App.,365 So.2d 376 (1978); Maund v. State, Ala.Cr.App., 361 So.2d 1144
(1978); Corbitt v. State, 35 Ala. App. 572, 50 So.2d 454 (1951).
 IV
Lastly, the defendant complains that his federal and state constitutional rights of due process and equal protection were violated by the refusal of the trial court to recess court at the conclusion of the State's case. On December 4, 1979, the trial of this case began at approximately 9:00 A.M. The State rested its case about 6:45 P.M. Then defense counsel requested a recess until a reasonable hour the next morning stating that the trial had run for approximately ten hours and that his two witnesses would be "fairly long witnesses." As it turned out the direct and cross examination of the defense witnesses take up only seventeen pages of the transcript. The transcript does not disclose at what hour the trial concluded.
The defendant has cited no authority for this issue. Former Title 13, § 117, Code of Alabama 1940, provided that the trial of jury cases should not proceed "later than seven o'clock p.m. each day, except by agreement of counsel." Although this section has been repealed (see Alabama Code Section 1-1-10
(1975)) we are guided by the case of Brazzell v. State,49 Ala. App. 508, 273 So.2d 484, 486 (1973), interpreting that section:
 "We of the ancient bar learned the hard way that this section does not mean what it says. We have been forced to try past midnight on many occasions and then wait on the jury's verdict at day break. With raw nerves, hot tempers, curse words reduced to sub-monotones, we endured the hours to find that all was well when the foreman said, `not guilty.' This section is directory only." (Citations omitted).
The defendant has not shown where he was harmed by proceeding with the trial of this case. We find no abuse of the trial court's discretion in this case. Shiflett v. State, 52 Ala. App. 476, 294 So.2d 444, cert. denied, 292 Ala. 749, 294 So.2d 448, cert. denied, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105
(1974).
We have searched the record for error as required by statute and found none. The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.