363 So.2d 1050 (1978)
Larry Glenn MEFFORD
v.
STATE.
8 Div. 67.
Court of Criminal Appeals of Alabama.
October 31, 1978.
John Mark McDaniel of McDaniel & McDaniel, Huntsville, for appellant.
William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.
HARRIS, Presiding Judge.
Appellant was put to trial upon a two-count indictment charging him with grand *1051 larceny and buying, receiving, concealing or aiding in concealing stolen property. Omitting the formal parts the indictment reads as follows:
"The Grand Jury of said County charge, that before the finding of this indictment, Larry Glenn Mefford whose name is unknown to the Grand Jury other than as stated, feloniously took and carried away the following, to-wit: one (1) Ford tractor, of the value of, to-wit: $35,000.00; one (1) trailer, of the value of, to-wit: $6,000.00; beer, of the value of, to-wit: $10,312.40. a further description of same being unknown to the Grand Jury; being of the total and combined value of, to-wit: $51,312.40: the personal property of S & S Distributing Company, Incorporated, a corporation, against the peace and dignity of the State of Alabama.
"Count Two: The Grand Jury of said County further charge that before the finding of this indictment, Larry Glenn Mefford whose name is unknown to the Grand Jury other than as stated, did buy, receive, conceal or aid in concealing the following, to-wit: one (1) Ford tractor, of the value of, to-wit: $35,000.00; one (1) trailer, of the value of, to-wit: $6,000.00; beer, of the value of, to-wit: $10,312.40, a further description of same being unknown to the Grand Jury; being of the total and combined value of, to-wit: $51,312.40, the personal property of S & S Distributing Company, Incorporated, a corporation knowing that the same had been stolen or having reasonable grounds for believing that the same had been stolen, and not having the intent to restore it to the owner, against the peace and dignity of the State of Alabama."
At arraignment, in the presence of his counsel, appellant interposed a plea of not guilty. The jury found him guilty of buying, receiving or concealing stolen property. The trial court sentenced appellant to imprisonment in the penitentiary for two years. The Court placed him on probation for five years, six months of which was to be served in the Madison County Jail. The Court further ordered appellant to make restitution in the amount of $9,812.40 for the stolen property.
The State's evidence shows that on or about September 6, 1977, appellant was employed as a truck driver for S & S Distributing Company, a corporation, in Madison County, Alabama. That day, Johnny Cobb, the general manager of S & S, instructed appellant to go to the Schlitz Brewery, in Memphis, Tennessee, pick up a load of beer, and bring it back to an S & S warehouse in Madison County. The Ford truck and Freuhauf trailer rig, which appellant was to drive, Cobb testified, were valued jointly at $41,000.00. The load to be picked up in Memphis consisted of 2,160 cases of Schlitz beer, and the invoice which Cobb subsequently received from the Memphis Brewery showed the value of the load to be $10,312.40.
Cobb further testified that each driver had one key to the company truck assigned to him, while Cobb retained the other. The company policy was that each driver was to keep his truck key on his person and keep the truck locked.
On the morning of September 7, 1977, Cobb testified, appellant called him at home and asked him if "somebody else had took the tractor out." When Cobb told appellant that no one else had taken the rig out, appellant replied that it was "missing." Cobb testified that the tractor was recovered later that day near Florence, Alabama, and the trailer was found empty, near Moulton, Alabama, that same day.
Herbert H. Younkin testified that he was a special agent with the Bureau of Alcohol, Tobacco and Firearms, United States Treasury. On September 6, 1977, Younkin observed an S & S company rig, with red cab and silver trailer, proceeding towards Huntsville, Alabama, on Highway 20, in Madison County. The rig parked on the side of the road and a car turned off of the west bound lane of Highway 20 on the east lane and pulled up behind the truck. In a few seconds the truck began to proceed towards Huntsville and the car followed behind it. Younkin trailed the two vehicles to the S & S warehouse where the truck *1052 idled for two or three minutes and then shut down. Younkin then heard a car door slam. In a minute or so the lights of both vehicles were turned on and they left the warehouse, proceeding through Huntsville, and turned on Highway 72 West, towards Athens, Alabama. Younkin discontinued his surveillance at that time because he had observed no federal violation committed; however, he contacted Madison County law enforcement officers.
Leon Greene testified that he was an Investigator in the Madison County Sheriff's Department. On the afternoon of September 9, 1977, Greene interviewed appellant at the Sheriff's Office in Huntsville, Alabama, and advised him of his Miranda rights. Appellant advised Greene that he wanted to make a statement. Greene testified that appellant then gave the following oral statement:
"A. He stated that he had beennot approached, but he had received a telephone call from an unidentified person, male person, and had agreed with this male person for the sum of $3,500.00 that he would leave his truck unlocked when he returned from bringing a load of beer from Memphis, and that he was to notify by telephone, a certain number, when his next trip was. He called that number and told the individual that his next trip would be the day after Labor Day, which would be a Tuesday, and that the sum agreed upon was $3,500.00. That he did go to Memphis on the date that he stated and returned and left his truck parked in the S & S parking lot by the warehouse and that he did not lock the truck; that he got in his car and that he drove off and went home, making one stop on the way home."
Subsequently, appellant reduced this statement to writing. In another oral statement, appellant refused to reveal the identity of his caller because, if he gave any further information, "he would be a dead man." Greene also testified that he found a piece of paper in appellant's wallet bearing a telephone number, which appellant stated was unknown to him. Greene testified that the called the number and was told that the business was the "Art Gallery," an antique shop. Merle Thompson, appellant's father-in-law, was present at that business at the time Greene called. Other people at this place refused to give Mr. Greene any information.
Johnny Cobb was then recalled. Cobb identified a bill of lading from the Memphis brewery for 2,160 cases of beer received by appellant on September 6, 1977. This was admitted into evidence without objection.
Herbert Younkin was then recalled and he testified that he spoke with appellant concerning his route into Huntsville. Appellant explained that he stopped outside of Huntsville to get a coke and to clean the windshield which was covered with oil and grime.
The State rested. At this time the appellant moved to exclude the State's evidence, one ground being that a prima facie case had not been made against him. This motion was denied.
Appellant presented the testimony of three witnesses who were formerly employed by S & S as truck drivers. Each testified that he had left keys in the truck, unlocked, and had not been instructed to do otherwise.
Appellant's wife testified that appellant was at home when she returned from league bowling at 9:15 p. m. Appellant exhibited no peculiar behavior.
Bobby Baskins testified that he saw appellant about 9:15 p. m. on September 6, 1977. Appellant did not act in an unusual manner.
Two witnesses then testified that appellant enjoyed a good general reputation in the community and that he was regarded as honest and truthful.
Appellant testified that he made his run to Memphis and picked up a load of beer on September 6, 1977, and returned that same day. The bill of lading was left in the truck at the warehouse. Appellant further testified that at that time he locked the truck, got in his own car and went home. Appellant further testified that he did leave the *1053 keys in the truck that night. He stated there was no company policy against this. Further, appellant repudiated the statements made by him to police, saying that he was repeatedly given lie detector tests and that he made up the story about the phone calls because he "wanted to go home." Appellant also denied having said he would be a dead man if he gave information to the police.
In rebuttal, the State called Leon Greene and T. C. Bill, a probation officer, who both testified that appellant had made the statement that if he gave them the name of the person who called him he would be a dead man. This concluded the testimony in the case.
As noted above, appellant moved to exclude the State's evidence on the ground that a prima facie case was not made against him. In brief, appellant elaborated that since he rightfully picked up the beer from the Memphis brewery in the course of employment, he did not at any point receive stolen property, citing Davidson v. State, Ala.Cr.App., 360 So.2d 728, cert. denied Ala., 360 So.2d 731. In that case defendant was allegedly renting a dwelling which she did not own and was convicted of buying and receiving stolen property. This Court, through Judge Bowen, held that the verdict was contrary to the law and evidence. We find the following language at pages 730 and 731.
"This contention of the appellant has merit though we need not venture outside our own jurisdiction for supporting authority.
"`A prior theft of property by some third person, is a prerequisite to receiving stolen goods, knowing them to be stolen. (citations omitted) It is essential to the crime here charged that the goods coming into the hands of the accused be stolen at the time the accused received them. Farzley v. State, 231 Ala. 60, 163 So. 394. Freeman v. State, 39 Ala.App. 451, 452, 103 So.2d 759, 760, cert. denied, 267 Ala. 626, 103 So.2d 761 (1958).
"For this reason, evidence tending to prove that the accused came into possession of the property described in the indictment solely through the burglarization of a house is insufficient to authorize a conviction of receiving stolen goods. Gallman v. State, 29 Ala.App. 264, 195 So. 768 (1940).
"In the offense of receiving stolen goods, the accused is guilty of receiving goods which had been taken and carried away by another. The offense of larceny is perfected before that of receiving stolen goods can be perpetrated. Foster v. State, 39 Ala. 229, 234 (1864).
"Thus Alabama law supports the general principle on this subject as stated in 136 A.L.R. 1087 at 1088, Annotation: May participant in larceny or theft be convicted of offenses of receiving or concealing the stolen property.
"`It is an elementary principle of law that the principal in a theft, or the person who actually steals the property, cannot be convicted of the crime of receiving, concealing, or aiding in the concealment of the property stolen.'
"The evidence in this case shows beyond any doubt that if the appellant did obtain the charged sum of money from the owner, she actually received it directly from Mrs. Crawford (the owner). The appellant, if guilty, was guilty of the actual taking and carrying away. Since a thief may not receive stolen property from himself, the appellant cannot be convicted of receiving stolen property where the evidence shows that she actually stole the property."
In the case at bar, appellant, if guilty, was guilty of the larceny of the property, as an accomplice. As a participant in the theft of the property, appellant could not receive the beer from himself. Davidson, supra.
There is authority in other jurisdictions that a defendant who aids or abets the theft of goods but takes no part in the actual caption and asportation of the goods may be guilty of buying, receiving or concealing property where the receiving takes place subsequent to and after the completion of the theft. 136 A.L.R. 1087, *1054 section III. Nor does a statute making an accessory a principal alter this conclusion, 136 A.L.R. 1087, 1100.
An analysis of this theory is not reached in that the State's evidence shows no possession of the stolen goods subsequent to their larceny. In order to sustain a conviction for receiving stolen property, the defendant must be shown to have had control of the property. Alabama Digest, Receiving Stolen Goods.
Since the evidence does not support the verdict of the jury, and the judgment of the Court as a matter of law, the judgment of conviction must be reversed and rendered. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1.
Reversed and Rendered.
All the Judges concur.