Appellant was charged in a two-count indictment with grand larceny and buying, receiving, concealing stolen property. At arraignment, in the presence of his counsel, appellant entered a plea of not guilty. The jury returned a verdict of guilty as charged and the trial court fixed the punishment at imprisonment in the penitentiary for a term of one year and one day. Appellant gave notice of appeal. He sought and obtained a free transcript and trial counsel was appointed to represent him on this appeal.
At the close of the State's evidence, and again at the conclusion of all the evidence, appellant moved for a directed verdict and moved to exclude the State's evidence on the grounds the State failed to make out a prima facie case. The motions were overruled and denied.
Robert E. Brannon, the owner of the stolen property, testified that he owned and operated the Hideaway Club in Opp, Alabama. On Thursday night, November 17, 1977, he closed the club between 11:00 p.m. and midnight and drove to the Shack, a gambling establishment in Opp. He was driving a green 1973 Chevrolet. He stayed *Page 378 
inside the Shack for twenty to thirty minutes, leaving in the car a new Smith and Wesson .38 caliber pistol and a locked safety deposit box containing approximately four hundred dollars in receipts from the Hideaway Club. The pistol was in the locked box. The car was locked, and he had not given anyone permission to enter his car and remove the property. Mr. Brannon testified that the pistol's value was approximately one hundred and fifty dollars. He further testified that the money and the pistol were never recovered.
When Mr. Brannon returned to his car he discovered the box and the gun were missing, and he contacted Officer Logan of the Opp Police Department. The two men returned to the Shack and talked with Naomi Lane, who lived next door.
On cross-examination, Brannon testified that he was shooting craps with Melvin Lawrence in the Shack, but that he did not lose any money to Lawrence and did not see appellant James Stoudemire that night. When Brannon returned to his car, the box and pistol were missing. The car doors were locked and there were no signs of the car being tampered with.
The key witness for the State was Naomi Lane, who testified that she saw the property taken from Brannon's car that night. It was Mrs. Lane's testimony that James Stoudemire and Melvin Lawrence came to her house, which was located next door to the Shack, around midnight. Lawrence came inside, where she and her son were watching television, and took a clothes hanger from the closet. Appellant remained outside on the door step.
The two men left and walked over toward the Shack. While appellant stood at the corner of the building next to the street, Lawrence opened the door of Robert Brannon's car with the clothes hanger, removed the box, and he and appellant walked off towards town. Melvin Lawrence had the box. Mrs. Lane had earlier seen Brannon drive up in the car and enter the Shack. When Officer Logan and Brannon talked with her later that night, she told them what she had seen.
Mrs. Lane underwent a lengthy vigorous and extensive cross-examination by appellant's counsel, and her testimony of the events of that night was gone over numerous times. Though there were many inconsistencies in her testimony on cross-examination she steadfastly maintained that appellant and Lawrence went to Brannon's car and after Lawrence got the box from the car both left the scene together. She testified, in response to questions by defense counsel, that Robert Brannon had not offered to pay her to testify, that the car driven by Brannon on the night in question was yellow, and that she was positive that she saw James Stoudemire with Melvin Lawrence that night. There was confusion in her testimony regarding having seen appellant and Lawrence earlier in the evening also. Mrs. Lane further testified that she frequently watched the activities at the Shack from her house. She also testified to the distance between her house and the Shack and that appellant was standing five or six steps from her front door when he and Lawrence came by her house that night.
She further testified that Brannon owned two Chevrolet automobiles. One car was green and the other was yellow. She stated the car that Brannon was driving that night looked yellow with the lights shining on it.
Melvin Lawrence testified for the defense that he was at the Shack on the night in question, but appellant was not with him, nor did he see appellant there. Brannon came to the Shack and appeared to be drunk. He testified that he had gone to Naomi Lane's house earlier in the evening but he did not go back there. Lawrence further testified that Brannon called him on the phone later that night but the trial judge excluded any testimony as to the conversation.
On cross-examination, Lawrence testified he saw appellant around 6:00 p.m. at Henderson's Cafe, near the Shack, but he did not see him again. When Lawrence left the Shack, Brannon had already gone. *Page 379 
Appellant, James Stoudemire, testified in his own behalf that he had nothing to do with taking any money from Robert Brannon's automobile and that he was not with Melvin Lawrence the night the property was stolen. Appellant testified that he was at Booster's Cafe, three blocks from the Shack, until 10:00 and then he went to work loading pecans for Paul Wiggins until around 12:30. He then went straight home.
Appellant further testified the first he knew about Brannon losing any money at the Shack was a day or two later when Brannon asked appellant if he saw Melvin Lawrence take the money. He did not accuse appellant at that time.
Officer Jenkins Logan, Opp Police Department, testified for the State on rebuttal that shortly after midnight on November 18, Brannon approached him while he was on patrol in Opp, and they went to the Shack and Naomi Lane's house, then rode around for an hour or two, looking around. Logan testified that in his opinion Brannon was not drunk.
On cross-examination, Logan drew a diagram of the Shack and Naomi Lane's house. He testified that he was unsure which house was Naomi Lane's, but that it was the first or second house from the Shack. The trial judge allowed this testimony but refused over appellant's objection to permit the introduction into evidence of the diagram.
The testimony at trial was lengthy, repetitive and often confusing, due at least in part to attempts by appellant's counsel to discredit the testimony of both the victim, Robert Brannon, and the eyewitness, Naomi Lane. However, evidence was presented which, if believed by the jury, was sufficient to sustain the general verdict of guilty as charged in the indictment.
The eyewitness testimony tended to prove that property of a proven value was lost by the owner and that it was lost by felonious taking. Such proof will support a conviction of grand larceny. Copeland v. State, 57 Ala. App. 482, 329 So.2d 171.
This Court has held on numerous occasions that the number of witnesses is not the basis for determining the issue as to guilt because a fact may be established as firmly by the testimony of one witness as by the testimony of an entire community. Smith v. State, Ala.Cr.App., 338 So.2d 1030; Freemanv. State, Ala.Cr.App., 350 So.2d 768.
The evidence presented by the State and appellant was in sharp conflict. It is not within the province of this Court to pass judgment on the truthfulness or falsity of conflicting evidence. May v. State, Ala.Cr.App., 335 So.2d 242; Snipes v.State, 50 Ala. App. 139, 277 So.2d 413.
While the evidence did not show that appellant, James Stoudemire, actually broke into Robert Brannon's car and took the money box and pistol, it did tend to show that he was present and ready to render aid and assistance. He is therefore equally guilty with the one who did the act. Goodman v. State,52 Ala. App. 265, 291 So.2d 358.
Count 2 of the indictment charged appellant with buying, receiving and concealing stolen property. The State's evidence showed that appellant was a principal in the felonious taking and carrying away of the property of Robert Brannon. It is the law in Alabama that the principal in a theft cannot be convicted of the crime of receiving, concealing or aiding in the concealment of the property which he has stolen. Davidsonv. State, Ala.Cr.App., 360 So.2d 728; Mefford v. State, Ala.Cr.App., 363 So.2d 1050. A conviction under Count 2 of the indictment cannot be sustained.
Where only one count of an indictment is sustained by the evidence, a general verdict of guilty will be referred to that count. The evidence presented on the grand larceny count was sufficient to sustain the jury's verdict. McGee v. State,20 Ala. App. 221, 101 So. 321.
Appellant contends that the trial court erred in refusing to give certain requested charges. In its oral charge the trial court charged the jury that their verdict must be *Page 380 
unanimous and that all twelve of them must agree on whatever verdict they returned. At the conclusion of the oral charge, appellant excepted and requested that, in addition to charging the jury that the verdict must be unanimous, the Court should also charge that each member of the jury must separately be convinced and only vote for guilty if separately convinced of the guilt of the defendant. This charge was not given by the Court.
It is settled in this state that refusal of a "single juror" charge is not reversible error, particularly in light of the charge to the jury that the verdict must be unanimous. Buckelewv. State, 48 Ala. App. 411, 265 So.2d 195, cert. denied 288 Ala. 735, 265 So.2d 202. In the case at bar the jury was also polled and each individual juror indicated that he or she concurred in the verdict.
Appellant also contends that the trial court erred in refusing two additional charges requested after the jury had received further instruction on reasonable doubt. Those charges were submitted in writing and were included by the Clerk in the record on appeal. The charges, however, do not bear the endorsement of the trial judge as having been refused by him. Such an endorsement is required by Code of Alabama 1975, §12-16-13, for consideration of the charges on appeal. The insertion of the charges into the record by the Clerk will not alone make them part of the record without the endorsement of the trial judge. Berry v. State, 231 Ala. 437, 165 So. 97. Due to the absence of the essential endorsement by the trial judge, the question of error in refusing appellant's requested charges is not properly before this Court.
Appellant further contends the trial court erred in refusing to admit the diagram drawn on cross-examination by the State's rebuttal witness, Officer Logan. The diagram was offered by appellant for the sole purpose of showing that Officer Logan's memory was vague and indefinite as to which house Naomi Lane lived in. The officer drew two houses, first marking one with an X, then the second with an N, indicating that one of the two was Naomi Lane's house. Also, Officer Logan testified that she lived in either the first or second house from the Shack, although he was not sure which one. After this testimony the diagram was offered into evidence and refused.
The excluded diagram was made a part of the record on appeal and the ruling of the trial court on its admissibility is therefore properly presented to this Court for review. Howardv. State, Ala.Cr.App., 347 So.2d 574.
The fact of Officer Logan's uncertainty concerning which house Naomi Lane lived in was admitted into evidence prior to the exclusion of the diagram through Logan's testimony. Since the diagram was offered for that purpose only, the error, if any, in refusing its admission was harmless. Reversal will not be predicated upon improper admission or rejection of evidence unless the error complained of has probably injuriously affected substantial rights of the parties. Powell v. State, 5 Ala. App. 75,59 So. 530; Rule 45 ARAP.
A careful search of the record reflects no error injuriously affecting the substantial rights of appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 651