TYSON, Judge.
Carlton Randolph Franklin was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment” and the trial court sentenced him to 25 years’ imprisonment in the penitentiary.
On the evening of September 20, 1983, Betty Ann Davis and Cornelius Brown were working at the Kentucky Fried Chicken Restaurant on Stone Street and Craft Highway in Mobile. Shortly after midnight, Brown and Davis went to the Commonwealth Bank on Stone Street to make a deposit of the day’s receipts which totaled $430.00.
Once at the bank, Brown drove up to the night depository which was in a well-lit area. Brown got out of the car and Davis handed him the money and the keys to the night depository. As Brown was attempting to open the night depository, Davis saw a shadow move by the car. Davis screamed and got on the floorboard.
As Brown turned to look at Davis, someone placed a shotgun to his head. Brown identified that person as this appellant. The appellant told him to give him the money and he appeared very nervous. Brown tried to calm the appellant down so he wouldn’t use the gun. Brown saw another man out of the corner of his eye.
After Brown gave the money to appellant, he was told to run around the building. Brown ran to the side of the bank and the appellant ran the other way. The appellant and another man ran across Stone Street in front of a car being driven by Edward Holder. The appellant fired a shot at Holder’s car and then ran toward Osage Street.
When Brown heard the shot, he jumped in his car and went back to Kentucky Fried Chicken. After dropping off Davis there, he found Officer Dimoff of the Mobile Police Department. Brown gave a description of the appellant and appellant’s clothing. Dimoff then relayed this information on his radio.
Officers Wilhelm and McClain received Dimoff’s call and proceeded down Craft Highway to St. Stephens Street. While traveling on St. Stephens, the officers saw a man fitting the description they had received. The man was running on one side of the street and, once he saw the officers, he crossed the street and began running in the other direction. The officers pursued the man and stopped him. That man was this appellant.
As the officers patted him down for weapons, the appellant said, “What are you doing this for? I hayen’t robbed anybody.” (R. 92). The pat down revealed the presence of a shotgun shell in the appellant’s pocket.
The appellant was then taken to Osage Street where he was positively identified by Brown and Holder.
Although the appellant admitted being in the area on the night in question, he denied any knowledge of this robbery.
I
During the State’s closing argument, the following occurred:
“MR. KIMBROUGH: I submit to you we do have good police work in this case. Officer Dimoff did exactly what he was suppose[d] to do. Officer McLain and Officer Wilhelm did exactly what they’re suppose[d] to do. He put the informa *1237 tion out over the air, they responded and they arrested the man that committed the crime. Okay. Then it’s turned over to the detective. Now the detective in this case is Sgt. Joe Connick, Sr.
“MR. WILSON: Judge, I’m gonna object to him commenting—
“(Inaudible because Mr. Kimbrough and Mr. Wilson talking at the same time.)
“MR. KIMBROUGH: ... that’s why I don’t have anything down here as far as what went on—
“THE COURT: Mr. Kimbrough, he’s objecting and I can’t hear both of you talking at the same time.
“MR. KIMBROUGH: Yes, sir.
“MR. WILSON: Your Honor, I object. He’s commenting on matters not in evidence. That’s not in evidence.
“THE COURT: Well, ladies and gentlemen, the statements made by the attorneys in the case are not evidence. Your verdict must be based upon the evidence which came from the witness stand. And if your recollection of the evidence differs with that in any statement made by any attorney, you disregard their statement and be guided by your collective recollection of the facts.
“Go head, Mr. Kimbrough.
“MR. KIMBROUGH: Your Honor, for the record, I’m trying to fight fire with fire and he brought the question up about where the clothes are and I’m just trying to explain to the jury the responsibility of clothes would be with the detective who is no longer with the police force and I don’t have him here and I can’t get the clothes. And, that’s the bottom line.” (R. 135-137).
The appellant now contends the trial court erred by overruling his objections to the prosecutor’s arguments. This argument has no merit.
First of all, as can be seen from the record, the trial judge never made an adverse ruling on the appellant’s objections.
Secondly,
“To require a reversal on the ground that the prosecutor has made a statement unsupported by the evidence, the objectionable statement must be made (1) as a fact, (2) the fact must be unsupported by any evidence, (3) must be pertinent to the issues, and (4) its natural tendency must be to influence the finding of the jury. Smith v. State, 261 Ala. 270, 73 So.2d 916 (1954); Madison v. State, 55 Ala.App. 634, 318 So.2d 329, cert. denied, 294 Ala. 764, 318 So.2d 337 (1975).”
Flint v. State, 370 So.2d 332, 334 (Ala.Crim.App.1979).
Although the prosecutor’s statement that Joe Connick, Sr. was the detective in this case was made as a fact and was not supported by the evidence, it was not pertinent to the issues involved and did not have a natural tendency to influence or mislead the finding by the jury. Therefore, there is no reason for reversal. Flint, supra.
Thirdly, the trial judge gave appropriate instructions to the jury to disregard any statements made by the attorneys which were not supported by the evidence. There is no error here. Retowsky v. State, 333 So.2d 193 (Ala.Crim.App.1976).
II
The appellant contends that his in-court identification by Brown should have been suppressed because his out-of-court identification was impermissibly suggestive.
“Whether a procedure used for an identification is so impermissively suggestive as to create a substantial likelihood of irreparable misidentification and violates due process depends on the totality of the circumstances. Stovall v. Denno 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. “A showup is not inherently unfair, and it is settled law that prompt, on-the-scene confrontations are not constitutionally impermissible, but are consistent with good police work. Donahoo v. State, Ala.Cr.App., 371 So.2d 68; Robinson v. State, 55 Ala.App. 658, 318 So.2d 354; Cornelius v. State, 49 Ala.App. 417, 272 *1238 So.2d 623. A showup by its inherent nature is, however, suggestive. Brazell v. State, Ala.Cr.App., 369 So.2d 25, cert. denied, 369 So.2d 31 (Ala.1979); Weatherford v. State, Ala.Cr.App., 369 So.2d 863, cert. denied 369 So.2d 873 (Ala.1979). “Once a determination has been made that an identification procedure is suggestive, it must be determined whether the identification was reliable even though the prior confrontation was suggestive. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. The totality of the circumstances must be considered in assessing the reliability of the identification. Factors to be considered in assessing the reliability of an identification were set out by the United States Supreme Court in Neil v. Biggers, supra. These factors, which include the opportunity of the witness to view the criminal act at the time of the crime, the witnesses’s degree of attention, the accuracy of the witness’s prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation, must be weighed against the suggestiveness of the identification. Neil v. Biggers, supra; Robinson v. State, 45 Ala.App. 236, 228 So.2d 850.”
Hobbs v. State, 401 So.2d 276, 279-280 (Ala.Crim.App.1981).
In the instant case, Brown viewed the appellant at arm’s length in a well-lit area during the course of the robbery. There is no doubt that Brown paid very close attention to the appellant, considering the fact that the appellant was pointing a shotgun directly at him. In fact, Brown was able to detect that the appellant was sweating profusely.
A few minutes after the robbery occurred, Brown gave Officer Dimoff a description of the robber and his clothing. Based on this description, Officers Wilhelm and McClain picked up the appellant and took him to Osage Street where he was identified by Brown as being the man who robbed him that same night. Brown said he was sure of his identification. This identification took place within one hour of the robbery.
“Although the use of the showup is a suggestive identification procedure, it can also be a procedure which tends to enhance the reliability of the identification. Bates v. United States, supra; Carter v. State, Ala.Cr.App., 340 So.2d 94.”
Hobbs, supra at 280.
Such is the case here. The consideration of the factors set out above, when weighed against the inherent suggestiveness of a showup, lead to the conclusion that the. in-court identification of the appellant was reliable and there was no substantial likelihood of irreparable misidentification.
There is no error in this record. This cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.