McMILLAN, Judge.
The appellant was indicted for murder and pleaded not guilty by reason of mental disease or defect at arraignment. He was found guilty and sentenced to a term of life imprisonment.
The appellant, Jimmy Ray Harris, was the father-in-law of the victim, Allen Black-wood. Blackwood had been married to the appellant’s daughter for approximately three years. Blackwood began having marital problems with the appellant’s daughter, Melissa, about a month prior to the murder. Melissa told her father, the appellant, that Blackwood had accused her of “sleeping around” and that she was therefore leaving him. The appellant expressed anger toward Blackwood for making such accusations about his daughter. The appellant took Melissa to his house, whereupon Blackwood came and got her the following morning. The appellant later the same day was approached by a friend who told him that Blackwood “was out of his head.” He suggested that the appellant should go get his daughter because Blackwood was going to hurt her. The appellant went to Blackwood’s house and while he was there, Blackwood pushed Melissa (also referred to at trial as Lisa), whereupon the appellant and Blackwood engaged in a scuffle. The appellant “grabbed” Melissa and took her home. Melissa testified that she told her father about all of the problems she was having with Blackwood. She testified:
“I told him that Allen [Blackwood] had accused me of being a whore and sleeping around with people. He made me have oral sex with him, that he had pulled a knife on me, and that he had beat me, and he had — we was [sic] in the car and he had me by the hair and he told me if he had a gun, that he would kill everybody around because I had slept with all of them.”
The appellant testified that he had bought a gun in order to protect his family from Blackwood. The appellant said he became “real nervous,” lost a good deal of weight, and began to walk around frequently. Proceedings were held in which Blackwood was committed to a mental institution. *106 The appellant stated that his wife, his daughter, and he attended these proceedings. Blackwood was later released. Melissa informed her father that she was going back to live with Blackwood in an effort to work out their problems. The appellant did not try to discourage her, but merely stated that it was his daughter’s decision. Blackwood came to the appellant’s trailer on the day of the killing. The appellant asked Blackwood to sit down upon entering the trailer. The appellant and the victim appeared to be calm. Melissa left the room to carry an afghan to her bedroom and when she returned the appellant was standing with a gun pointed at Blackwood. Several shots were fired and Melissa and her mother “ran” the appellant into the kitchen. Melissa’s mother held the appellant while Melissa ran for help. The appellant still had the gun. A neighbor helped to hold the appellant and tried to get the gun away from him. He testified that the appellant did not look as if he knew what he was doing. Another neighbor had stopped and after leaving the scuffle, approached the appellant. He managed to get the gun from the appellant. He testified that the appellant had “a wild look” to his eyes and did not appear to recognize him. Thereafter, he called the police and an ambulance.
I
The appellant contends that the trial court committed reversible error in giving the jury an “Allen” charge. The record indicates that the jury began deliberating at 11:40 a.m. and, at 4:20 p.m., the following transpired:
“The Court: Ladies and gentlemen of the jury, the bailiff advised me that he got the impression at one point that you had a verdict and then you decided that you did not have a verdict.
“Are you making any progress? You will continue to deliberate, will you not?
“The Jurors: Yes, sir.
“The Court: Who is your foreman?
“Juror: Charles Mixon.
“The Court: I am not asking you how the jury stands numerically or anything of that kind, but I am asking you if you are continuing to deliberate and attempting to reach a verdict?
“Juror Mixon: Yes, sir.”
Later, at 4:50 p.m., the jury returned with a question for the court. Following the trial court’s response, the jury again retired for deliberations. The record does not indicate the time, but the following later took place:
“The Court: Ladies and gentlemen, you have made it known to the Court through the bailiff that you feel that you are incapable of reaching a verdict; is that correct?
“Juror: That is correct.
“The Court: I don’t want you to tell me what the numerical figures are, but I gather that the jurors are divided. Have you made any progress recently, or has it been in the condition from the beginning or have you made some progress?
“Juror: We made some progress at one point.
“The Court: But you have not made any progress recently?
“Juror: No, sir.
“The Court: All right, ladies and gentlemen of the jury, it is your duty and your responsibility to agree upon a verdict in this case, if you can do so without violating your conscientious convictions based upon the evidence in this case.
“Your convictions should not be based on personal opinions or past experiences or anything that you have ever read or hear or see [sic] on television. Your conviction must be based upon the evidence and on the testimony in this case. You should deliberate patiently and long, if necessary. You should have a full and free exchange of views with each other, and you should consider the issues submitted to you without prejudice or previously formed bias. You should cultivate a spirit of harmony and tolerance and arrive at a verdict if you can do so conscientiously.
“Scan and weigh the testimony of the witnesses solely with the view of ascertaining the truth, shutting your eyes to the personal results of your findings, and *107 apply the facts as you ascertain them to the law as given to you by the Court.
“No juror, from pride of opinion, hastily formed or expressed should refuse to agree to stand out in an unruly, unreasonable or obstinate way. But, on the other hand, no juror should surrender his conscientious views founded upon the evidence and the law as declared by the Court. Let each juror re-examine for himself, please, the grounds of his opinion and the reason with his fellows concerning the facts with an honest desire to arrive at the truth, and with the view of rendering a true verdict according to the evidence.
“It should be the object of all of the jury to arrive at a common conclusion and to that end, you should deliberate together with calmness and candor and patience. Lay aside your pride of opinion and judgment, and examine the differences of opinion there may be among you in a spirit of fairness, and reason together. Talk over such differences and harmonize them, if this be possible so that the case may be justly disposed of. Every juror should listen to the arguments of his fellows and endeavor conscientiously to reach a verdict.
“It is not my purpose, ladies and gentlemen, to force or coerce you to reach a verdict in this case. What I have said to you must not be taken as any attempt on the part of the Court to require or force you to surrender your honest and reasonable convictions founded upon the law and the evidence in this case. My sole purpose is to impress upon you your duty, and responsibility and the desirability and importance of reaching a verdict, if you can conscientiously do so.
“So, I want you to deliberate some more, please, and give a fair and reasonable and patient consideration to the arguments of your fellows; consider the evidence under the rules of law as declared to you by the Court. And remember that each juror must be governed by his own conscience and that he cannot be controlled by the minds and consciences of his fellows. Make an earnest and conscientious effort to arrive at a true
verdict, because, if you are unable to agree, I will have to declare a mistrial. That means that this case will have to be tried again from the beginning by twelve people just like you are. Now, you are just as intelligent and just as able to reach a verdict in this case as will be the next jury. So, I earnestly urge you, don’t — try to reach a verdict in this case if you possibly can, because the next jury is not going to be any better suited to reach a verdict in this case than you are. And then, it could go on and on and on. You see what I’m getting at? You all have heard all of the testimony, all of the evidence. You are intelligent. You actually testified on voir dire that you had no preconceived notions in this case and that you are going to base your verdicts solely on the testimony and not something that may have happened to you way back down through the years in your personal life or something that may have happened to somebody else, but that you are going to base your verdict on the testimony that came from this witness stand and on the law as I tried to explain it to you.
“I’m going to ask you to keep trying, please, and see if you can make any progress at all. Now, is there a question?
“Juror: Yes, sir. I think it would help us if you — the four parts that you read about the insanity, what constitutes insanity by the law of Alabama. There was a fourth part that was — I don’t think it would hurt to read it to us again, the fourth part that said — that was talking about temporary mania and such as that. I think that would be helpful.
“The Court: Let me get a better statement of that, then while you all continue to deliberate, please.”
Thereafter, the defense counsel requested a mistrial because the jury was unable to reach a verdict. He further objected to the trial court’s giving the Allen charge. The motion was denied and the exception overruled. The trial court responded to the jury’s request, following which the defense counsel renewed his motion. At 6:25 p.m., *108 the jury reached a verdict finding the appellant guilty as charged. The jury was then polled and each member responded that his or her verdict was as stated.
“ ‘It is not improper for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict so long as it does not coerce or suggest which way the verdict should be returned. McMorris v. State, 394 So.2d 392 (Ala.Cr.App.1980), cert. denied, 394 So.2d 404 (Ala.1981); Allred v. State, 390 So.2d 1109 (Ala.Cr.App.), cert. denied, 390 So.2d 1114 (Ala.1980); Lake v. State, 390 So.2d 1088 (Ala.Cr.App.), cert. denied, 390 So.2d 1093 (Ala.1980).’ Galloway v. State, 416 So.2d 1103, 1109 (Ala.Cr.App.1982). ‘In situations such as the one at issue, judges may, and frequently do, encourage jurors to continue deliberating in the hope that some agreement will be reached. This is never improper as long as the judge does not coerce the jury to reach a verdict or suggest to them a particular verdict. Strickland v. State, 348 So.2d 1105 (Ala.Cr.App.1977); Jones v. State, 56 Ala.App. 444, 322 So. 2d 735 (1975).’ Murry v. State, 455 So. 2d 53, 64 (Ala.Cr.App.1983). ‘Examining the judge’s supplemental charge in the “whole context of its setting,” we find that it is not coercive or threatening.’ Daniels v. State, 416 So.2d 760, 762 (Ala.Cr.App.1982).”
Mahan v. State, 508 So.2d 1180 (Ala.Cr. App.1986).
The numerical division of the jury was never stated by the judge, nor was it ever indicated anywhere in the record. Furthermore, the trial judge asked not to be informed of the numerical division. See Gidley v. State, 19 Ala.App. 113, 115, 95 So. 330 (1923). The trial court, further, did not indicate to the jury through words or conduct that it “expected” a verdict. Orr v. State, 40 Ala.App. 45, 111 So.2d 627 (1958), affirmed, 269 Ala. 176, 111 So.2d 639 (1959).
“ ‘It is quite clear that under Alabama law a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used.’ Showers v. State, 407 So.2d 169, 171 (Ala.1981).”
Channell v. State, 477 So.2d 522, 531 (Ala.Cr.App.1985).
II
The appellant argues that the trial court committed reversible error in refusing the appellant’s “orally requested jury charge.” The record indicates that when the jury returned, unable to reach a verdict, and requested that the trial court re-read a portion of its charge concerning “temporary mania,” the trial judge charged them as follows: “Insanity which will excuse a crime under the new Criminal Code test must be the result of a mental disease or defect. Emotional insanity or temporary mania not associated with the disease of the mind, does not constitute insanity.” Thereafter, outside of the presence of the jury, the defense counsel requested that the trial court charge the jury as follows: “That a person can have a mental disease on a temporary basis at a particular moment, and if that disease does indeed cause that person not to be able to appreciate the criminality of his conduct, conform his conduct to the requirements of the law, and we have proven the special plea and that it can be only a temporary basis, it need not be a continuing disease that goes on and on but can only be proven that it existed at the exact time or approximate time of the charge.” The trial court had previously charged the jury on the law concerning a plea of not guilty by reason of mental disease or defect, following which defense counsel objected and stated:
“We request the Court to charge the jury to the extent that a person can have mental disease or defect on a temporary basis and as a result of mental disease or defect be incapable of his criminal to the requirements of the law or appreciate the criminality of a person’s conduct, and instruct the jury of the instance where a mental disease existed — and if mental disease existed at one particular moment —it may not exist that day or the day before, and if not — at that particular mo *109 ment of the crime and as a result of the disease, he is not able to appreciate the criminality and conform to the requirements of the law.”
No written requested charge was submitted by the defense counsel on temporary insanity. Moreover, in his brief, the defense counsel acknowledges that the charge made by the trial court to the jury concerning temporary mania was a correct statement of the law. McKinnon v. State, 405 So.2d 78 (Ala.Cr.App.1981).
Furthermore, considering the requested instruction in light of the entire charge and in connection with the evidence, there is nothing prejudicial. Pounders v. State, 55 Ala.App. 204, 208-09, 314 So.2d 123,127-28 (Ala.Cr.App.1975); Grant v. State, 250 Ala. 164, 33 So.2d 466, 471 (Ala.1948). The evidence presented by the appellant indicated that the mental disease or defect upon which he was relying for his defense had been present over a number of years and had potentially been inherited from his mother. There was testimony that the appellant had previously been treated for a nervous disorder, and the appellant testified that he had been in the hospital for this condition approximately 15 to 20 years prior to the killing. Dr. William B. Beidle-man, an associate professor of psychiatry and medical psychology, was called by the defense counsel to testify concerning an evaluation he performed on the appellant. Dr. Beidleman testified that the appellant had “a fairly chronic history of what I [Dr. Beidleman] called major affective disorder which is a fancy way of saying he has a long history of severe depression.”
“ ‘The evidence as it relates to the plea of not guilty by reason of insanity falls far short of establishing the fact that appellant’s mind was so affected as to render him unaccountable for his act. While there was some evidence tending to show that appellant was not in all respects in his normal mind at the time of the homicide, no verdict in agreement with the great weight of the evidence could have found anything more to the point than an expression of emotional insanity, for which there is no recognition in the law of this state as an excuse for crime.’ ”
Barbour v. State, 262 Ala. 297, 310, 78 So.2d 328, 341 (Ala.1954), quoting Coffey v. State, 244 Ala. 514, 517-18, 14 So.2d 122, 124 (1943); cf. Lister v. State, 437 So.2d 622 (Aia.Cr.App.1983).
Ill
The appellant charges that the trial court committed reversible error in failing to give his requested charge No. 4, concerning the lesser included offense of manslaughter; No. 3, stating that once the appellant proves that he was insane, the burden shifts to the State to prove otherwise; and Nos. 9, 10, and 11, dealing with character testimony.
Section § 12-16-13, Code of Alabama (1975), reads:
“Charges moved for by either party must be in writing and must be given or refused in the terms in which they are written, and it is the duty of the judge to write, ‘given’ or ‘refused,’ as the case may be, on the document and sign his name thereto, which thereby becomes a part of the record.”
The requested jury charges contained in the record were not marked to indicate that they were given or refused, nor were they signed by the judge.
“The insertion of the charges into the record by the Clerk will not alone make them part of the record without the endorsement of the trial judge. Berry v. State, 231 Ala. 437, 165 So. 97. Due to the absence of the essential endorsement by the trial judge, the question of error in refusing appellant’s requested charges is not properly before this Court.”
Stoudemire v. State, 365 So.2d 376, 380 (Ala.Cr.App.1978). See also Woods v. State, 387 So.2d 313, 316 (Ala.Cr.App.1980). Furthermore, because none of the written charges were marked as “given” or “refused,” this issue is not preserved for our review. Moore v. State, 447 So.2d 1321 (Ala.Cr.App.1984); Rush v. State, 397 So. 2d 195 (Ala.Cr.App.), cert. denied, 397 So.2d 197 (Ala.1981); Davis v. State, 401 So. *110 2d 218 (Ala.Cr.App.), cert. denied, 401 So.2d 221 (Ala.1981).
AFFIRMED.
All the Judges concur.