John David Kitsos was charged in the alternative with manslaughter and vehicular homicide. A jury convicted him of criminally negligent homicide, a lesser included offense of manslaughter. He was sentenced to 12 months' imprisonment, was fined $1000, and was ordered to pay court costs and restitution. Kitsos raises three issues in this appeal from his conviction.
 I
Kitsos contends that the trial court erred in denying his motion for judgment of acquittal which was made at the close of the State's case.
 "When a motion [for judgment of acquittal] is made on the ground that the State has failed to establish a prima facie case, it is the duty of the trial court to determine the sufficiency of the evidence to sustain a conviction under the indictment. In its determination, the trial court should consider only the evidence before the jury at the time the motion is made and must consider it most favorably to the State. When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit it to the jury, and, in such a case, this court will not disturb the trial court's decision."
Andrews v. State, 473 So.2d 1211, 1213-14 (Ala.Cr.App. 1985) (citations omitted). With these principles in mind, we turn to a review of the State's evidence.
On the afternoon of May 21, 1988, two automobiles, a white Capri that was travelling south and a red Honda that was travelling north, collided on Highway 45, just south of Chunchula, in Mobile County. The occupants of the red Honda — Arsie Burke, his wife Fredna, and their grandchildren, five-year-old Charlie Burke and one-year-old Brandy Grant — all died from massive injuries suffered in this wreck. A blood sample taken from Arsie Burke, the driver, tested negative for alcohol and basic drugs. Mobile police officer J.E. Burrow, testifying for the State as an accident reconstructionist, stated that, in his opinion, the collision occurred while both vehicles were in the northbound lane.
Prosecution witness John Shell testified that he and his family left Citronelle, Alabama around 2:30 p.m. on the afternoon of May 21, 1988 and began driving south on Highway 45. Shell stated that Highway 45 is a two-lane highway, "one each way." For some 15 to 20 minutes Shell observed a *Page 981 
white vehicle travelling south in front of him. According to Shell, this vehicle was travelling in an erratic manner, running off the road on the right-hand side at least three times and travelling in the left-hand (northbound) lane at least three times. On one of its forays into the left-hand lane, Shell observed the white car run a northbound car off the road. Shell described the collision:
 "We were still driving south on Highway 45, and this was just north of Highway 158 and it was somewhere in the neighborhood of 3:00 o'clock in the afternoon. The white vehicle that was in front of me was going along, at that time was staying pretty much in its lane, and just right as the road starts to curve there, it curves a little bit to the right, and just all of a sudden it just went right over into the northbound lane and collided head-on with a red vehicle that was coming northbound."
Shell identified Kitsos as the driver of the white car.
James E. Cook testified that he was driving north on Highway 45 around 3:00 p.m. on Saturday, May 21, 1988. Near Chunchula, he was run off the road by a white car with tinted windows which "came over in [his] lane." After being forced off the road, Cook observed that "the car just stayed on the wrong side of the road for about a hundred yards and went around the curve."
Prior to the collision, Kitsos had played in a golf tournament in Citronelle. Noel Turner, a member of the threesome with whom Kitsos played, testified that there was a keg of beer located between the eleventh and twelfth holes and that he observed Kitsos get a cup of beer on two separate occasions. The first time he observed Kitsos getting beer was around 11:00 a.m.
Pritchard Fire Captain Bobby Holifield attended Kitsos at the scene shortly after the wreck. According to Captain Holifield, Kitsos "had some cuts and bruises, and you could smell the alcohol. [Kitsos] also stated to [Holifield] that he had had one and a half beers at the golf course." Pritchard police officer Eddie Goff also talked with Kitsos at the scene. Officer Goff stated that he "detected a strong odor on [Kitsos'] breath that appeared to me to be alcohol." In response to Officer Goff's question, "[H]ad you been drinking," Kitsos said, "[Y]es." According to Goff, Kitsos stated, "I drank three, no, one and a half beers on my way from the golf course in Citronelle."
As noted above, the indictment charged Kitsos with the alternative offenses of vehicular homicide and manslaughter. "[I]n order to establish a prima facie case of homicide by vehicle, it must be proved that a death occurred as the proximate result of the defendant's being 'engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic. . . .' Ala. Code 1975, § 32-5A-192." Whirley v.State, 481 So.2d 1151, 1154 (Ala.Cr.App. 1985), writ quashed, 481 So.2d 1154 (Ala. 1986). State law prohibits a person from driving a vehicle while "[u]nder the influence of alcohol," § 32-5A-191(a)(2), and also requires, with certain exceptions, none of which are applicable here, that vehicles be driven on the right-hand side of the road, §32-5A-80(a). The evidence before the trial court at the time of Kitsos' motion for judgment of acquittal was clearly sufficient to raise a jury question of Kitsos' guilt under the vehicular homicide count.
Kitsos was charged with the "reckless" form of manslaughter defined in § 13A-6-3(a)(1). The elements of this offense and the offense of criminally negligent homicide were discussed at length by this Court in Phelps v. State,435 So.2d 158 (Ala.Cr.App. 1983):
 "[A] person commits the crime of manslaughter if he recklessly causes the death of another person. Section 13A-6-3(a)(1). The reckless offender is aware of a substantial and unjustifiable risk and 'consciously disregards' it. Section 13A-2-2(3); commentary to Section 13A-2-2.
 " 'A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.' Section 13A-6-4. 'A person *Page 982 
acts with criminal negligence . . . when he fails to perceive a substantial and unjustifiable risk that the result will occur. . . .' Section 13A-2-2(4). In both manslaughter and criminally negligent homicide '(t)he risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.' Sections 13A-2-2(3) and (4).
 "The only difference between manslaughter under Section 13A-6-3(a)(1) and criminally negligent homicide is the difference between recklessness and criminal negligence. 'The reckless offender is aware of the risk and "consciously disregards" it. On the other hand, the criminally negligent offender is not aware of the risk created ("fails to perceive") and, therefore, cannot be guilty of consciously disregarding it.' Commentary to Section 13A-2-2. 'The difference between the terms "recklessly" and "negligently," . . . is one of kind, rather than degree. Each actor creates a risk of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it.' C. Torcia, 1 Wharton's Criminal Law Section 27 (14th ed. 1978) (emphasis in original).
 "Negligence 'is distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and purpose of his conduct and the care that would be exercised by a reasonable person in his situation.' Commentary to Section 13A-6-4."
Phelps, 435 So.2d at 164, quoted in Woods v.State, 485 So.2d 1243, 1245-46 (Ala.Cr.App. 1986). Seealso Jones v. State, 514 So.2d 1060, 1065 (Ala.Cr.App.), cert. denied, 514 So.2d 1068 (Ala. 1987).
The State's evidence was clearly sufficient for the jury to find that Kitsos created a substantial or unjustifiable risk of harm to the occupants of the Honda. Just as clearly, there was sufficient evidence for the jury to infer that Kitsos either disregarded or failed to perceive this risk. We note that a person acts recklessly where he "creates a risk [of harm] but is unaware thereof solely by reason of voluntary intoxication." § 13A-2-2(3). There was no error in the trial court's denial of the motion for judgment of acquittal.
 II
Kitsos contends that the prosecutor's closing argument was improper and prejudicial in two instances. First, he asserts that a specific portion of the prosecutor's argument was not supported by any evidence.
Due to his injuries, Kitsos was transported from the scene of the collision to Springfield Memorial Hospital. Dr. Charles Dyas, the physician who attended Kitsos at the hospital, was called as a defense witness. Dr. Dyas testified on direct examination that hospital records indicated that Kitsos' blood alcohol level was .046%. On cross-examination by the prosecutor, Dr. Dyas testified that hospital records showed that the blood sample for the blood alcohol test was drawn from Kitsos at 4:50 p.m., some two hours after the collision. After Dr. Dyas acknowledged that alcohol dissipates from the blood system at "a pretty predictable rate," the prosecutor stated: "And that's point oh one five milligrams per hour, roughly? I may have the milligrams wrong, but point oh one five." Defense counsel's "object[ion] to the question because it's based on a false untrue hypothesis" was overruled, and Dr. Dyas stated: "To be honest, I'm not a toxicologist, but my understanding is that it dissipates at a rate of point oh five percent per hour."
There was no objection to or motion to exclude this answer. Shortly after this exchange, defense counsel stated in a side-bar conference that "it takes a significant period of time before [alcohol] even gets into your blood" and indicated that he would "have to get some more witnesses," presumably to testify to this effect. However, *Page 983 
no questions regarding this matter were asked of Dr. Dyas on redirect, nor did any other defense witnesses testify as to the time necessary for alcohol to enter the blood system.
During closing arguments, the prosecutor made reference to the doctor's testimony that the dissipation rate of alcohol from the blood is .05 percent per hour. He then argued that Kitsos' blood alcohol level would have been higher than .046% at the time of the collision, as some of the alcohol in his blood dissipated between the time of the collision and the time the blood sample was drawn and tested.
The courts of this state have often stated that, while "counsel may not argue as a fact that which is not in evidence, . . . he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning." Sasser v. State, 494 So.2d 857,859 (Ala.Cr.App. 1986). Accord, Ex parte Washington,507 So.2d 1360, 1361 (Ala. 1986); Ex parte Ainsworth,501 So.2d 1269, 1270 (Ala. 1986). "[T]he rule is that counsel are allowed considerable latitude in drawing their deductions from the evidence in argument to the jury." Espey v.State, 270 Ala. 669, 674, 120 So.2d 904, 907 (1960). It is well settled that both the prosecutor and defense counsel have the right to present their impressions from the evidence.E.g., Cross v. State, 536 So.2d 155, 160 (Ala.Cr.App. 1988); Sanders v. State, 423 So.2d 348, 351-52
(Ala.Cr.App. 1982). In closing, counsel "may examine, collate, sift, and treat the evidence in his own way" and "may argue every matter of legitimate inference from the evidence."Watson v. State, 398 So.2d 320, 328 (Ala.Cr.App. 1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied,452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).
In view of the testimony of Dr. Dyas, we conclude that the prosecutor's argument was within the bounds of the precepts set forth above. Cf. Donahoo v. State, 505 So.2d 1067,1072 (Ala.Cr.App. 1986) (prosecutor could argue inferences from evidence that was admitted over defendant's objection on condition that prosecutor "tie it up" and that "went unchallenged by the defendant at any subsequent time in the trial" even though the prosecutor failed to "tie it up"). Moreover, at the point at which Kitsos objected to this portion of the prosecutor's argument, the trial court instructed the jury as follows:
 "Well, Ladies and Gentlemen, as I told you earlier, the statements made by the attorneys in the case are not evidence and your verdict should be based upon the evidence, and if your recollection of the evidence differs with that in any statement made by any attorney you should disregard their statement and accept and be guided by your collective recollection of the evidence."
Such an instruction serves to eradicate any prejudice to a defendant. See Petite v. State, 520 So.2d 207, 209-10
(Ala.Cr.App. 1987); Franklin v. State, 485 So.2d 1235,1237 (Ala.Cr.App. 1986).
During the prosecutor's rebuttal argument, the following occurred:
 "Mr. Harrison [prosecutor]: This is not the only criminal trial that occurs in the United States. It's not the first criminal trial that occurred in the United States. In every criminal trial the prosecution bears the burden of showing sufficient evidence from which you can gather that intent. It's not something that's totally unapproved. If it were, we could never charge anybody with — anybody in any courtroom. If there's any possibility, as Mr. Haas [defense counsel] said? Sure there's possibility. There's possibility, like I say, that some spacecraft from the moon came down.
"Mr. Haas: Now, Judge, I object —
"Mr. Harrison: I'm in closing argument.
 "Mr. Haas: I object to him saying that. That's facetious. This is a serious matter, spacecraft and the moon. That's improper.
"The Court: Overruled."
It appears that the prosecutor's argument may have been a response to defense counsel's argument. See generally,Dossey v. State, 489 So.2d 662, 664-65 (Ala.Cr.App. 1986). However, since the record does *Page 984 
not contain the arguments of counsel in their entirety, we cannot know the context in which this statement was made, and we are thus unable to make any determination in that regard. In any event, "the trial judge in a criminal prosecution has broad discretion in controlling closing arguments," Mitchell v.State, 450 So.2d 181, 186 (Ala.Cr.App. 1984), for he "can best determine when discussion by counsel is legitimate and when it degenerates into abuse," Anderson v. State,469 So.2d 1362, 1364 (Ala.Cr.App. 1985). The trial court's decision with regard to closing arguments is to be accorded great weight, Orr v. State, 462 So.2d 1013, 1015-16
(Ala.Cr.App. 1984), and will not be reversed on appeal absent a showing of abuse of discretion, see Saffold v.State, 485 So.2d 806, 808 (Ala.Cr.App. 1986). Kitsos has failed to demonstrate how he was prejudiced by this remark, and we find no abuse of discretion in this case.
 III
Kitsos contends that the trial court erred in refusing to give eight of his requested charges. These charges are marked "refused," but are not signed by the trial judge. The State maintains that Ala. Code 1975, § 12-16-13, precludes this Court from reviewing refused requested charges that are not signed by the trial judge.
Section 12-16-13 provides in pertinent part:
 "Charges moved for by either party must be in writing and must be given or refused in the terms in which they are written, and it is the duty of the judge to write 'given' or 'refused,' as the case may be, on the document and sign his name thereto, which thereby becomes a part of the record." (Emphasis added.)
This section placed a duty on the trial judge to both mark the charge "given" or "refused" and to sign the charge.Hudson v. State, 49 Ala. App. 282, 284, 270 So.2d 828,831 (1971); Kiker v. State, 27 Ala. App. 306, 309,172 So. 288, 290 (1936), modified and cert. denied, 233 Ala. 448,172 So. 290 (Ala. 1937). Where a trial judge refused a written charge, his action would not be reviewed on appeal unless he had both marked the charge "refused" and signed it.See Corbitt v. State, 35 Ala. App. 572, 573,50 So.2d 454, 455 (1951) (where written requested charge was marked "refused," but was not signed by the trial judge, review of refusal by Court of Appeals was precluded); Womack v.State, 34 Ala. App. 487, 488, 41 So.2d 429, 430 (1949) (where charge bore trial judge's signature, but was not endorsed "given" or "refused," it did "not meet the demands of the rule" and would not be reviewed). These cases appear to be based on the premise that, unless the dictates of §12-16-13 are met, requested charges are not properly a part of the record and thus not subject to the review of an appellate court.
In 1973, the Alabama Supreme Court adopted the Alabama Rules of Civil Procedure, and, in civil cases, § 12-16-13 was superseded by Rule 51. Code Commissioner's Note, Ala. Code 1975, § 12-16-13. Rule 51, A.R.Civ.P., provides in pertinent part:
 "[A]ny party may file . . . written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The judge shall write 'given' or 'refused' as the case may be, on the request which thereby becomes a part of the record."
Rule 51 clearly does not require the trial judge to sign the requested charges, although the charges must be marked "given" or "refused." We note that Rule 51 differs from § 12-16-13
in a number of other respects as well. For example, under §12-16-13, written requests for instructions could be submitted at any point in a trial before the jury retired, see Rogersv. State, 36 Ala. App. 602, 603-04, 61 So.2d 249, 250
(1952), and the trial judge informed the jury which party had requested any written instructions that were given. In contrast, under Rule 51, requested written instructions must be filed at least by the close of the evidence, and the trial *Page 985 
court does not inform the jury which party requested a specific written instruction.
Rule 51 applies only in civil cases. Even after the adoption of Rule 51, § 12-16-13 continued to apply in criminal cases, Brown v. State, 339 So.2d 125, 126 (Ala.Cr.App. 1976); St. John v. State, 55 Ala. App. 95, 97,313 So.2d 215, 217, cert. denied, 294 Ala. 768, 313 So.2d 218
(1975), and this Court continued to require that refused requested instructions be signed by the trial judge as a prerequisite to review on appeal, e.g., Woods v.State, 387 So.2d 313, 316 (Ala.Cr.App. 1980);Stoudemire v. State, 365 So.2d 376, 380 (Ala.Cr.App. 1978).
However, in 1982, the Alabama Supreme Court adopted Rule 14, A.R.Cr.P.Temp. Ex parte Allen, 414 So.2d 993, 995
(Ala. 1982). Rule 14[1] "is taken almost verbatim from Rule 51," Comment, Rule 14, A.R.Cr.P.Temp., and provides in pertinent part:
 "[E]ither party may file . . . written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The judge shall write on each request 'given' or 'refused,' as the case may be, and the request shall thereby become part of the record."
Rule 14, A.R.Cr.P.Temp., like Rule 51, A.R.Civ.P., requires only that a requested instruction be marked "given" or "refused," it does not require that the trial judge sign the requested instruction. As noted above, Rule 51 clearly superseded § 12-16-13 and its attendant signature requirement. "At the time of the adoption of Rule 14, [the Alabama Supreme Court] held that its purpose was to 'harmonize the procedure regarding instructions in both civil or criminal cases.' Ex parte Allen, 414 So.2d [at 995]."Matkins v. State, 497 So.2d 201, 202 (Ala. 1986). To continue to require that requested instructions be signed by the trial judge in criminal cases while there is no such requirement in civil cases clearly does not "harmonize" instruction procedures. We therefore conclude that, under Rule 14, the trial judge's signature is not a prerequisite for inclusion in the record or appellate review of refused requested instructions. Cases decided by this Court after the adoption of Rule 14 in which we have indicated otherwise[2]
are hereby expressly overruled.
We find no error in the trial court's refusal to give the charges requested by Kitsos. Requested charge number 6 required a finding of intent in order to convict. Kitsos was charged with the form of manslaughter found in Ala. Code 1975, §13A-6-3(a)(1), and vehicular homicide. Intent is not an element of either of these offenses, see §§ 13A-6-3(a)(1),13A-2-2(3), 32-5A-192(a), nor is intent an element of criminally negligent homicide, see §§ 13A-6-4(a),13A-2-2(4), the offense of which Kitsos was ultimately convicted. Requested charge number 6 was clearly an incorrect statement of law and was properly refused for that reason.See Yessick v. State, 274 Ala. 488, 490,149 So.2d 818, 820 (1962); Sasser v. State, 494 So.2d 857, 860
(Ala.Cr.App. 1986); Craig v. State, 410 So.2d 449, 454
(Ala.Cr.App. 1981). Requested charge number 9 was properly refused as it was an affirmative charge on the matter of intoxication. See Kelley v. State, 409 So.2d 909, 915
(Ala.Cr.App. 1981); Brown v. State, 401 So.2d 213, 218
(Ala.Cr.App.), cert. denied, 401 So.2d 218 (Ala. 1981). Under the facts of this case, the question of whether Kitsos was under the influence of alcohol at the time of the collision was a matter for the jury. *Page 986 
"Requested charges must be considered in the light of, or in connection with, all other charges given by the court."Page v. State, 487 So.2d 999, 1008 (Ala.Cr.App. 1986). Having reviewed the trial court's charge in its entirety, we conclude that the charge as given fairly and substantially covered the following requested charges: number 7 (requirement of a moral certainty of guilt); number 8 (presumption found in Ala. Code § 32-5A-194(b)(1)); number 10 (same); number 12 (difference between "recklessness" and "criminal negligence"); number 14 (requirement of gross negligence); and number 15 (failure to perceive risk). Consequently, there was no error in the trial court's refusal of these requested charges.See Rule 14, A.R.Cr.P.Temp.; Young v. State,283 Ala. 676, 679, 220 So.2d 843, 845 (1969); Acres v.State, 548 So.2d 459, 468 (Ala.Cr.App. 1987).
Kitsos also complains that the trial court erred in instructing the jury under § 32-5A-194(b)(2) and (3).[3]
"Instructions as to legal principles unrelated to the factual situation under consideration should not be given to the jury."Bui v. State, 551 So.2d 1094, 1115 (Ala.Cr.App. 1988), affirmed, 551 So.2d 1125 (Ala. 1989). However, "[a] trial court will not be put in error for charging a correct principle of law, though it might not be strictly applicable to the case on trial, unless the natural tendency of the charge is to mislead the jury." Traywick v. State, 378 So.2d 1196, 1197
(Ala.Cr.App. 1979).
We cannot say that these instructions were clearly unrelated to the "factual situation" of this case. As noted above, there was testimony as to Kitsos' blood alcohol level two hours after the collision and also testimony that alcohol dissipates from the blood system over time. In any event, we do not think that these instructions, when viewed in context of the charge as a whole, had a "natural tendency" to mislead the jury. We note that the trial court also instructed the jury that a "person is under the influence of alcohol if his mental or physical faculties are affected by the consumption of alcohol" and that the charge also included instructions on reckless driving and the statutory requirement of driving on the right-hand side of the road.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] On May 31, 1990, our Supreme Court adopted permanent Rules of Criminal Procedure which become effective January 1, 1991. We note that Temporary Rule 14 has been transferred to Rule 21 in the permanent rules. Aside from being divided into two parts, one covering instructions, Rule 21.1, and the other addressing objections thereto, Rule 21.2, there are virtually no changes from Temporary Rule 14.
[2] Harris v. State, 536 So.2d 104 (Ala.Cr.App. 1987); Lee v. State, 504 So.2d 743 (Ala.Cr.App. 1987);Toles v. State, 484 So.2d 512 (Ala.Cr.App. 1985);Curtis v. State, 424 So.2d 679 (Ala.Cr.App. 1982).
[3] § 32-5A-194(b)(2) provides:
 "If there were at the time in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol."
§ 32-5A-194(b)(3) provides:
 "If there were at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol."